WALTER J. SCHLOSS ASSOCIATES, Respondent, v ARKWIN INDUSTRIES, INC., et al., Appellants.

Second Department, November 29, 1982

APPEARANCES OF COUNSEL

*Baer Marks & Upham* (*Eugene R. Scheiman, Stephen F. Selig* and *Thomas E. Albright* of counsel), for appellants.

*Wasserman, Chinitz, Geffner & Green* (*Edwin L. Wol* and *Bernard A. Green* of counsel), for respondent.

OPINION OF THE COURT

MOLLEN, P. J.

The complaint alleges that plaintiff was a minority stockholder of defendant Arkwin Industries, Inc. (Arkwin). Defendant Berlin, the founder, president and board chairman of Arkwin, was the majority stockholder, owning 85% of all issued and outstanding shares. In 1978 and 1979, Arkwin, a producer of material for use in the defense industry, realized increased sales and profits, and as of April 30, 1979, had a backlog of firm offers worth $35,000,000. At the same time, the corporation showed signs of increased profitability for the immediate future. Nevertheless, defendants deliberately refrained from declaring any dividends and announced that none would be declared in the future. It is alleged that this action depressed the market value of Arkwin's stock.

On December 3, 1980, an agreement was entered into providing for the merger of Arkwin and Newark Properties Corporation (Newark) of which Berlin was the sole owner. Pursuant to the agreement, Arkwin was to be wholly owned by Berlin, and all other holders of Arkwin's common shares would receive a cash payment of $7 per share. By notice dated December 3, 1980, a special meeting of Arkwin shareholders was called. The stated purpose of the meeting, which was scheduled for December 23, 1980, was to approve the merger agreement. To that end, a proxy statement and a copy of the agreement were attached to the notice of the meeting. The proxy statement informed shareholders that Berlin had a sufficient number of votes to effect approval of the merger without the affirmative vote of any other shareholder and that he intended to vote in favor of the merger. The proxy statement also informed shareholders that Berlin would own all the outstanding shares of the surviving corporation, and asserted that Berlin's sole ownership would benefit the corporation in two ways: It would dispense with the requirements of the Federal securities law that shareholders be apprised of information which, when made public, tended to place the corporation in a disadvantageous position with respect to competitors, and it would save the costs attendant to conducting business as a public corporation. The proxy statement further advised that the book value of Arkwin as of July 31, 1980, was $10.64 per share. This price allegedly did not reflect the value of the $35,000,000 backlog of firm orders, the fair market value of depreciated equipment and property owned by Arkwin or its prospects for future profits and growth. The proxy statement also asserted that, notwithstanding a report by a research group engaged by Arkwin that the $7 per share offered minority shareholders could not be certified as fair, Arkwin intended to offer that price based on its own determination to the contrary. The offer would be made even though Arkwin admitted in the proxy statement that the terms of the merger and the $7 per share to be paid public shareholders were not based on an arm's length negotiation.

Additionally, the proxy statement set forth the rights of shareholders who objected to the agreement and proposed merger. Notice was given that they, as dissenting shareholders, could avail themselves of the judicial appraisal procedure for determining the fair value of their shares by complying with the requirements of section 623 of the Business Corporation Law.

Based upon the foregoing factual allegations, the complaint asserts (1) that defendant Berlin engaged in extensive self-dealing with Arkwin, (2) that, in effect, the merger of Arkwin and Newark served no corporate purpose, and (3) that Berlin, as controlling stockholder of Arkwin, breached his fiduciary duty to treat minority stockholders fairly and equitably when, *inter alia,* he knowingly offered an inadequate price per share for the stock of the minority shareholders. The complaint claims further that plaintiff, as one of Arkwin's minority stockholders, was injured by defendants' conduct and has no adequate remedy at law. The relief sought was rescission of the merger, an accounting and damages. It should be noted, however, that subsequently in this action plaintiff stated: "The prayer for relief in the Class Action to set aside the merger is meaningless * * * because, like Humpty-Dumpty, ARKWIN cannot be restored now that it is effectively merged into BERLIN's wholly-owned corporation [i.e., the surviving corporation]. Plaintiff is willing to stipulate that said prayer be eliminated in the Class Action." Thus, rescission is no longer sought in this action. Instead, as represented by plaintiff, the action seeks only an accounting and damages.

Defendants moved to dismiss the complaint on the ground, *inter alia,* that it fails to state a cause of action. They argued that the appraisal procedures established by section 623 of the Business Corporation Law were plaintiff's exclusive remedy for the injuries alleged in the complaint, and that, since plaintiff did not avail itself of that statutory remedy, relief is unavailable by way of the instant action. Plaintiff cross-moved in opposition and sought an order, pursuant to CPLR 902, 903, and 904, permitting this action to be maintained as a class action. In denying defendants' motion and granting the cross motion,

Special Term held that the complaint states a valid cause of action for breach of a fiduciary duty. In effect, the court concluded that the appraisal procedures under section 623 of the Business Corporation Law were not the exclusive remedies for the injuries asserted and that plaintiff's failure to avail itself of these procedures did not bar the instant action. We agree.

In *Matter of Willcox v Stern* (18 NY2d 195, 204), the Court of Appeals observed that "it has been a judicial principle that equity *will* act — despite the existence of an appraisal remedy — where there is fraud or illegality". Thus, in *Yoss v Sacks* (26 AD2d 671), this court held that "an equity action to recover damages" would lie where minority shareholders allege "wrongful and fraudulent acts".

Relying largely on *Breed v Barton* (54 NY2d 82), however, our dissenting colleague would dismiss the plaintiff's action because, "[a]lthough originally requesting the equitable remedies of rescission and accounting", the complaint, in its present state, shows a "fatal absence of any primary request for equitable relief". In our view, the dissenter's heavy reliance upon *Breed v Barton* (*supra*) is misplaced.

In that case, the relevant question as framed by the court was whether shareholders "who dissent from a corporate merger *and pursue their statutory appraisal rights*" may maintain an action for money damages for fraud alleged to have occurred in connection with a merger, absent a primary request for equitable relief (54 NY2d, at p 84; emphasis supplied). The court held that such an action may not be maintained *"once the appraisal right has been exercised"* because "the Legislature intended to limit the type of action a dissenting shareholder would be entitled to prosecute *in the face of an appraisal election*" (54 NY2d, at pp 85, 86; emphasis supplied). Explaining the underlying rationale for its holding, the court wrote (p 87): "Allowing the prosecution of a legal action for damages *after the exercise of the right of appraisal* would be unnecessarily duplicative in that full and proper monetary recovery of the fair value of the dissenters' share may be obtained in the appraisal

proceeding. Limiting the exception to equitable relief thereby serves the valid function of denying dissenting shareholders the ability *to reopen prior appraisal proceedings* and again seek the identical relief merely by alleging fraudulent or unlawful corporate conduct in relation to the merger" (emphasis supplied).

In the instant case, the plaintiff has chosen not to institute a statutory appraisal proceeding, but rather to bring a plenary action. This election eliminates the danger of the type of duplicative proceeding which the holding in *Breed v Barton* (*supra*) was intended to prevent. We fail to perceive any reason why a dissenting shareholder who elects to forego a statutory appraisal proceeding may not pursue an action for an accounting and damages where he alleges that the protested merger was the product of the defendant's unlawful and fraudulent conduct. The complaint here alleges patently fraudulent conduct and a flagrant breach by defendant Berlin of his fiduciary duty to the plaintiff. Accordingly, the motion to dismiss the complaint was properly denied.

We have considered the other contentions raised by defendants and find them to be without merit.

MANGANO, J. (dissenting). Based on the facts, which are accurately set forth in the majority's opinion, it is their view, and that of Special Term, that the appraisal procedures contained in section 623 of the Business Corporation Law are not the exclusive remedies for the injuries asserted and that plaintiff's failure to avail itself of these procedures does not bar the instant action, which as represented by plaintiff, seeks damages, and, by implication, only damages.[1]

I respectfully disagree.

---

1. That only damages are now requested seems apparent. Although originally the remedies of rescission, accounting and damages were sought when the request for rescission was withdrawn, the request for an accounting was, impliedly, also withdrawn. Plaintiff, no longer seeking to dissolve the merger, has abandoned its interest in the premerger account of Arkwin. This was the account to which it had entrusted its money, and, thus, was the only one it could have had settled in an equitable action for an accounting (see *Schantz v Oakman,* 163 NY 148; *Marvin v Brooks,* 94 NY 71; *Stevens v St. Joseph's Hosp.,* 52 AD2d 722; 1 NY Jur 2d, Accounts and Accounting, § 30).

## I

Article 9 of the Business Corporation Law authorizes any two or more domestic corporations to merge into a single corporation, which shall survive as one of the constituent corporations participating in the merger (see Business Corporation Law, § 901). Procedures are established for the approval of a plan of merger by the board of each constituent corporation (Business Corporation Law, § 902) and for its submission to the shareholders of each for their authorization by a two-thirds vote (Business Corporation Law, § 903).

Section 623 of the Business Corporation Law recognizes a shareholder's right to object to corporate action, including merger, and establishes procedures for a dissenting shareholder to elect and demand payment of the fair value of his shares. If the corporation fails to make a written offer to each electing shareholder to pay for his shares at a specified price considered as fair by the corporation, or if any dissenting shareholder or shareholders disagree with the price offered (Business Corporation Law, § 623, subds [g], [h]), a special proceeding may be instituted in the Supreme Court of the judicial district in which the office of the corporation is located to determine the rights of dissenting shareholders and to fix the fair value of their shares (Business Corporation Law, § 623, subd [h]). Either the corporation (Business Corporation Law, § 623, subd [h], par [1]) or the dissenter may institute such a proceeding (Business Corporation Law, § 623, subd [h], par [2]), but the latter may only act upon the former's failure to do so.

Finally, in subdivision (k) of section 623, the statute declares that the enforcement by a shareholder of his right to receive payment for his shares in the manner provided in section 623 shall exclude the enforcement by such shareholder of any other right to which he might otherwise be entitled by virtue of share ownership. An exception to this general rule, however, is expressly stated in the same subdivision, viz., "that this section shall not exclude the right of such shareholder to bring or maintain an appropriate action to obtain relief on the ground that such corporate action will be or is unlawful or fraudulent as to him".

Thus, shareholders objecting to corporate action, such as merger, will have, in the notice of election and demand, and judicial appraisal procedures of section 623, an exclusive remedy for enforcing their shareholder rights. Nevertheless, a dissenting shareholder may, under the exception in subdivision (k), bring an action alleging fraud or illegality, but only if such is an appropriate action. What then is an appropriate action?

## II

In *Matter of Willcox v Stern* (44 Misc 2d 827, mod 24 AD2d 845, affd 18 NY2d 195), petitioner commenced an article 78 proceeding to review the action of the Superintendent of Insurance in approving a merger of American Surety Company and Transamerica Insurance Company[2] (44 Misc 2d 827, 828, *supra*). Petitioner, a minority stockholder of American, contended that the proposed merger was unfair, inequitable and without statutory sanction, and that it did not afford equity of treatment to all stockholders of American, but rather gave preferential treatment to majority stockholders. He further contended that the consideration offered for his stock under the merger proposal was grossly inadequate (pp 827, 829).

On respondents' cross motion to dismiss the petition as legally insufficient, Special Term observed that, as a general rule, petitioner's exclusive remedy would be the right of judicial appraisal (p 830). Nevertheless, it stated that (pp 830-831) "the exclusiveness of this remedy is qualified by a well-recognized exception where fraud and overreaching on the part of the majority may be involved or gross inequity may result (see *Eisenberg* v. *Central Zone Property Corp.*, 306 N.Y. 58; also Business Corporation Law, § 623, subd. [k])." Wherefore, the court held as follows (p 831): "Here it is alleged in the petition (par. 16) that Transamerica exercised control over American to its own benefit, improperly depleting the assets of the corporation, and it is intimated that the device of merger is utilized to avert the possibility of derivative actions to compel restoration of mishandled or wasted funds. Giving every fair

---

**2.** Section 486 of the Insurance Law requires approval of such a merger by the Superintendent of Insurance.

intendment to that paragraph and also paragraph 17, which charges that the Superintendent approved the merger despite an alleged statutory duty to withhold approval for the reasons therein mentioned, it must be concluded that petitioner has set forth adequately, if imprecisely, a valid cause of action. In this aspect, the fact that petitioner has already commenced appraisal procedures cannot be deemed an election of remedies so as to bar this instant procedure. The question raised here is not whether the Superintendent acted properly in deciding that the sell-out price was fair and equitable, but whether he acted properly, in disregard of reasonable objections raised, by approving a merger alleged to be a device to cover up fraud or breach of fiduciary obligations." Notwithstanding this conclusion that the petition set forth a viable cause of action, the court dismissed the petition, since it mingled valid allegations with others legally insufficient and could not be answered as it stood. The dismissal, however, was without prejudice to the commencement of a new proceeding upon a properly constituted pleading (p 831).

The Appellate Division, First Department, modified the order at Special Term by striking the leave granted petitioner to serve an amended petition and by adding a provision granting petitioner permission to apply at Special Term for leave to replead (24 AD2d 845, *supra*). It held that it did not satisfactorily appear that there was factual support for petitioner's claims of fraud and breach of trust or that these claims would furnish a basis for an attack upon the action of the Superintendent as unlawful, arbitrary or unreasonable. The Appellate Division then observed in dictum that "the petitioner may have an adequate remedy in the recovery of the value of his stock in the appraisal proceeding or the recovery of damages in a proper action" (p 845), implying that, since an adequate remedy appeared to exist, article 78 relief should be denied (see *Matter of Simon v Bailey,* 172 Misc 186, 188).

The Court of Appeals affirmed on the ground that the petition, although containing allegations of fraud, did not give any factual support for those allegations, nor indicate that such claims would furnish a basis for an attack upon the Superintendent of Insurance in an article 78 proceed-

ing (18 NY2d 195, 204, *supra*). Nevertheless, the Court of Appeals did not follow the suggestion of the Appellate Division that an article 78 proceeding may not lie because of the existence of other adequate remedies. The court held that (p 204) "[i]f petitioner could spell out charges of actual fraud, they may be relevant to a determination of whether the Superintendent acted arbitrarily or capriciously in approving the merger in disregard of reasonable objections raised." This conclusion was reached not because the article 78 proceeding was viewed as an appropriate vehicle for determining the actual value of petitioner's stock and whether he would have received fair value for it under the merger proposal, but because it was the proper procedure for testing the reasonableness and rationality of the Superintendent's act (p 203). The court explained that the sole and exclusive remedy for determining the value of the stock would be a judicial appraisal proceeding (pp 203-204). Nevertheless, it held that an adequately pleaded article 78 proceeding would not be barred by this exclusivity rule since (p 204) "it has been a judicial principle that equity *will* act — despite the existence of an appraisal remedy — where there is fraud or illegality * * * [which is the] principle [that is] codified in section 623 (subd. [k]) of the Business Corporation Law".

In *Willcox,* therefore, an article 78 proceeding, if adequately pleaded, was viewed as an "appropriate action" by which dissenting shareholders could challenge a corporate merger, because "equity *will* act" where fraud or illegality are alleged. It is curious to note, however, that the article 78 proceeding in *Willcox,* which sought review of the Superintendent of Insurance's determination approving the merger, was not an equitable proceeding. Derived, as it is, from the common-law writ of certiorari, such is a special proceeding seeking extraordinary legal relief (CPLR 7801; 8 Weinstein-Korn-Miller, NY Civ Prac, pars 7801.04, 7801.05). In this context, the Court of Appeals holding as to the availability of equitable relief is somewhat confusing. The confusion is dispelled, however, when it is recognized that the essential complaint in *Willcox* was fraud and breach of trust, and the ultimate relief sought was annulment of the Superintendent's approval of the merger, or, in

effect, a dissolution of the merger and rescission of the merger agreement. In traditional terms, therefore, the judicial proceeding in *Willcox* sought the equitable relief of rescission on the ground of fraud (see 24 NY Jur, Fraud and Deceit, § 223). It can even be said that the administrative proceeding before the Superintendent of Insurance, pursuant to section 486 of the Insurance Law, to the extent it permitted dissenting stockholders to object to the proposed merger, involved in effect, an application to prevent the merger by way of another equitable remedy, i.e., injunction (see 28 NY Jur, Injunctions, § 1).

Thus, when one recognizes the essence of the claim in *Willcox,* and the nature of the relief sought, it becomes clear that equitable principles were being invoked and equitable remedies requested. It was in this context that the Court of Appeals in *Willcox* discussed the parameters of the exception to the rule that the right of appraisal is the exclusive remedy for stockholders objecting to corporation action, such as merger (Business Corporation Law, § 623, subd [k]). It stated that "equity *will* act" when fraud or illegality are alleged (*Matter of Willcox v Stern,* 18 NY2d 195, 204, *supra*). Thus, it restated the common-law rule as codified by subdivision (k) of section 623 of the Business Corporation Law, viz., that the right of appraisal is the exclusive remedy for dissenting stockholders, except that (and that is a narrow exception) an action or proceeding in the nature of a suit in equity will be permitted as an "appropriate action" to attack fraudulent or illegal corporate activity.

In *Breed v Barton* (54 NY2d 82), a recent case involving an action by minority stockholders attacking a corporate merger on the ground of fraud, the Court of Appeals clarified its holding in *Willcox*. It stated (at p 87): "[S]ubdivision (k) of section 623 codified the common-law exception to the rule of exclusivity that a *proceeding in equity* will lie, notwithstanding the availability or exercise of the right of appraisal when corporate action is alleged to be fraudulent or illegal (see *Eisenberg v Central Zone Prop. Corp.,* 306 NY 58; 3 White, New York Corporations [13th ed], par 623.02, p 6-567). Accordingly, an 'appropriate action' within the meaning of subdivision (k) is one in which a

dissenting shareholder seeks some form of *equitable relief*" (emphasis added). Under *Breed,* therefore, the meaning of the term "appropriate action" was refined to denote an action that is not only equitable in nature, but also *seeks some form of equitable relief.* Thus is it not enough merely to plead a cause of action over which equity would take jurisdiction, e.g., one based on constructive fraud for breach of fiduciary duty (see *Kaminsky v Kahn,* 23 AD2d 231, 239-240; *Jackson v King,* 4 Cow 207, 219-221; 24 NY Jur, Fraud and Deceit, § 213; 30 CJS, Equity, § 50, subd [e]). There must be a request for equitable relief which, in fact, must be the primary relief sought. Money damages are only available, if at all, as ancillary or incidental to such equitable relief (*Breed v Barton,* 54 NY2d 82, 87, *supra*).

At the Appellate Division in *Breed* (74 AD2d 388), it was implied that under subdivision (k) of section 623 of the Business Corporation Law there is an even narrower exception to the exclusivity rule of the right of appraisal. Not only is an "appropriate action" one seeking equitable relief, but it must seek the equitable relief of injunction (p 391; see Schaeftler, Business Associations, 32 Syracuse L Rev 13, 55). The Court of Appeals did not adopt this holding, but only limited the exception in subdivision (k) of section 623 to include appropriate actions seeking any form of equitable relief, and not simply an injunction (*Breed v Barton,* 54 NY2d 82, 87, *supra*).

Nevertheless, both the Appellate Division and the Court of Appeals stressed that equitable relief must be the primary request of an action permitted by subdivision (k), and that money damages, if available, must be incidental (74 AD2d 388, 391, *supra*), or ancillary (54 NY2d 82, 87, *supra*), to a grant of such relief. Each also cited *Yoss v Sacks* (26 AD2d 671) as an example of a proper case in which money damages might be awarded. The Court of Appeals did so without explanation (54 NY2d 82, 87, *supra*). The Appellate Division, however, explained that *Yoss* was a proper case for the awarding of money damages because (pp 390-391) "in *Yoss v Sacks* (26 AD2d 671, 672), an equity action, the Second Department stated that despite the commencement of the prior appraisal proceed-

ings, subdivision (k) of section 623 authorized the plaintiff there to seek *'equitable relief'* (emphasis added) upon a proper showing that the transfer of assets of the corporation was fraudulent or unlawful as to him." It appears, therefore, that the Appellate Division in *Breed* interpreted language in *Yoss v Sacks* (26 AD2d 671, 674, *supra*) as indicating that, at least in its first two causes of action, there was a primary request for equitable relief. The Court of Appeals seems to have accepted that interpretation, despite the fact that *Yoss v Sacks* was an "equity action to recover *damages*" (at p 671; emphasis added). As can be seen from a review of the record on appeal in *Yoss,* no equitable relief was requested. Thus, although the mistaken citation of *Yoss v Sacks (supra)* might be confusing on the issue of an "appropriate action" under the exception in subdivision (k) of section 623 of the Business Corporation Law, the principle of law for which it was cited was clearly enunciated in *Breed v Barton (supra)*, viz., that in such an action money damages[3] may only be awarded if ancillary to a grant of traditionally equitable relief.[4]

---

**3.** Since law and equity are merged in New York, and only one form of civil action now exists (CPLR 103, subd [a]), it might be observed that the distinction being made here, and in *Breed v Barton* (54 NY2d 82) between legal and equitable relief no longer obtains. If money damages, "the amount which the *law* awards as pecuniary compensation, or satisfaction, for an injury done or a loss sustained" (13 NY Jur, Damages, § 1, p 420; emphasis added), are available in an action pleaded on equitable grounds (CPLR 3017, subd [a]; *Ungewitter v Toch,* 31 AD2d 583, affd 26 NY2d 687), then could it not be said that money damages are a form of equitable relief? Quite to the contrary. The fact that a trial court in its discretion may grant the legal relief of money damages in a case pleaded as a suit in equity *(Doyle v Allstate Ins. Co.,* 1 NY2d 439; *Ungewitter v Toch, supra;* 3 Weinstein-Korn-Miller, NY Civ Prac, par 3017.06) is due to the abolition of the forms of action, legal and equitable — essentially a matter of procedure. The substantive principles of law and equity, however, have not been abolished. The distinctions in their nature, role and purpose, and the different remedies appropriate to each are still very much with us (McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C103:1, p 14).

**4.** Although it may be impossible to enumerate all of the special kinds of relief that equity may grant *(Rector, Churchwardens & Vestrymen of St. Stephen's P.E. Church v Rector, Churchwardens & Vestrymen of Church of Transfiguration,* 201 NY 1, 10), the ordinary remedies administered by equity are well ascertained and clearly defined, both as to their form and nature, and, in their *specific* character, are certainly distinguishable from legal remedies which are all general recoveries of specified sums collectable by execution out of any nonexempt property of the judgment debtor (1 Pomeroy, Equity Jurisprudence [5th ed], § 170, pp 226-227). Examples of equitable relief are: injunction, reformation and rescission of instruments quieting title and possession of land, specific performance of contracts, foreclosures of mortgages of land or chattels, etc. (1 Pomeroy, Equity Jurisprudence [5th ed], § 171, pp 228-231).

Wherefore, in the face of "the availability or exercise of the right of appraisal", the only other remedy authorized by subdivision (k) of section 623 of the Business Corporation Law for the enforcement of a dissenting shareholder's rights is an action in equity alleging fraudulent or illegal corporate activity and requesting some form of equitable relief (*Breed v Barton, supra,* at p 87; *Matter of Willcox v Stern,* 18 NY2d 195, *supra*). An action for damages alone will not lie, since this would allow a dissenting shareholder, by merely alleging fraudulent or unlawful corporate conduct, to seek therein the identical relief available to him in appraisal proceedings.[5] For example, where, as here, there is "a forced liquidation or sale of the minority shareholders' stock incident to a merger" (*Klurfeld v Equity Enterprises,* 79 AD2d 124, 134), the full and proper monetary recovery of the fair value of dissenters' shares may be obtained in appraisal proceedings in which the discharge of the majority's fiduciary duty to the minority can be weighed in determining fair value (see *Klurfeld v Equity Enterprises, supra,* pp 134-135). Consequently, an action for damages by a minority shareholder based on the fraudulent or illegal corporate conduct of the majority in discharging its fiduciary duty would be unnecessarily duplicative.

### III

In the case at bar, the complaint alleges fraud and breach of fiduciary duty. It, therefore, states the grounds for a cause of action over which equity would exercise jurisdiction. Nevertheless, "there is a fatal absence of any primary request for equitable relief" (*Breed v Barton,* 54 NY2d 82, 87, *supra*). Although originally requesting the equitable remedies of rescission and accounting, the complaint, in its present state, seeks only damages (see *supra,* p 151).[6] Wherefore, it is barred by the rule of exclusivity set

---

**5.** It should be emphasized that the exclusivity rule as interpreted by the Court of Appeals in *Breed v Barton* (*supra*) did not limit its applicability to cases such as *Breed* where the right of appraisal had been exercised. It extended it to cases, such as the one at bar, where the right was apparently not exercised but clearly available.

**6.** I reiterate that the record shows plaintiff's withdrawal of the cause of action for rescission, and, by implication, for an accounting. As to the latter, it must be underscored that in withdrawing the rescission action and disclaiming any interest in the former corporation, per se, plaintiff precluded an accounting action against defendant Berlin based on his fraud and overreaching as a director and majority stockholder in the premerger corporation. Such an action must be brought in the name and right, and for

forth in subdivision (k) of section 623 of the Business Corporation Law.

Accordingly, the order appealed from should be reversed, plaintiff's cross motion denied, defendants' motion granted and the complaint dismissed.

LAZER and NIEHOFF, JJ., concur in the opinion of MOLLEN, P. J.; MANGANO, J., dissents and votes to reverse the order, deny plaintiff's cross motion, grant defendant's motion and dismiss the complaint, in an opinion.

Order of the Supreme Court, Nassau County, dated June 29, 1981, affirmed, with $50 costs and disbursements.

---

the benefit, of the corporation (*Greaves v Gouge*, 69 NY 154, 157; see Business Corporation Law, §§ 626, 720; see, also, 4 Pomeroy, Equity Jurisprudence [5th ed], §§ 1094, 1095, pp 273-283). Where, as here, the corporation in which the plaintiff is a stockholder no longer exists by reason of merger, and there is no request to revive it by rescinding the merger, plaintiff's right to have the allegedly wrongdoing director-majority stockholder account for the benefits derived from his misconduct will be equally nonexistent. Plaintiff's right, being strictly derivative, will cease upon the demise of the corporation, and certainly in this case, upon plaintiff's acceptance of that demise. Moreover, we note that the record shows not only that plaintiff withdrew the accounting action by implication in withdrawing the request for rescission, but also failed properly to plead the accounting action in the first instance (see 20 Carmody-Wait 2d, Civ Prac, §§ 121:110-121:112, 121:132). The complaint does not seek to have defendant Berlin account to plaintiff as representative of the premerger corporation but appears to request an accounting and payment of improperly withheld funds by Berlin to plaintiff in its individual capacity, revealing plaintiff's real, and, in fact stated, intent, i.e., to obtain damages.