OPINION OF THE COURT
Edward H. Lehner, J.
The central issue on the applications before the court is whether in an appraisal proceeding pursuant to Business *506 Corporation Law § 623 a dissenting shareholder is entitled to assert claims of breach of fiduciary duty by the majority.
Petitioner, Direct Media/DMI, Inc. (DMI), commenced this appraisal proceeding seeking a determination of the fair value of its shares of common stock held by respondent, Adrea Rubin, who cross-moved for an order authorizing her to conduct certain discovery and to depose DMI’s expert witnesses. DMI then cross-moved to dismiss the counterclaims asserted in respondent’s answer.
DMI was a privately held corporation engaged in the business of direct mail brokerage and management. Pursuant to its certificate of incorporation, it was authorized to issue 5,000 shares of common stock. Respondent was employed by DMI as a list broker from 1980 to 1990. She also served as a member of its board of directors. Since its inception, DMI has consistently offered its employees shares of its common stock for nominal consideration as a form of incentive compensation. For example, in 1980 respondent and four other employees purchased 30 shares of common stock each from David Florence, its founder and principal shareholder. Respondent paid $300 for these shares. By the time respondent left the employ of DMI, her 30 shares represented 6.52% of the corporation’s outstanding shares of common stock.
At the end of 1994, DMI had 460 shares of common stock outstanding. These shares were held by five shareholders, including respondent. DMI also had 540 shares in its treasury which it had repurchased from shareholders. In January 1995, the corporation’s board of directors authorized the issuance of 526 of the treasury shares to key employees for $1 per share. With the exception of one DMI shareholder whose ownership percentage in the company increased by 3.21%, the percentage ownership interest of DMI shareholders decreased as a result of the January 1995 issuance, with the interest of Mr. Florence having dropped from 34.34% to 16.02%.
On April 29, 1996, the board of directors and majority shareholders of DMI approved the sale of substantially all of the corporation’s assets to Acxiom Corporation (Acxiom), a Delaware corporation. The consideration for the deal was $25 million, less certain deductions and interest in the amount of $2,341,350 or, should DMI subsequently elect, one million shares of Acxiom stock. Respondent, the sole shareholder to vote against the sale and the sole shareholder who was not then an employee, filed a notice of election to dissent and demanded payment for her shares. The transaction closed on April 30, 1996.
*507 On May 15, 1996, DMI sent respondent a written offer to pay her the sum of $20,000 per share for her 30 shares of common stock in the company, for an aggregate amount of $600,000. The written offer was accompanied by a check in the amount of $480,000. Respondent promptly rejected the offer, and this proceeding ensued.
The petition seeks, inter alia, a determination of the value of respondent’s shares as of April 30, 1996, pursuant to Business Corporation Law § 623. In her counterclaims, respondent seeks the right to receive payment for her shares at their fair value as of April 28, 1996. Respondent also seeks damages based on the alleged self-dealing of the board of directors, officers and employees of DMI. Specifically, she claims that the board of directors and majority shareholders of DMI improperly distributed 526 treasury shares of common stock to DMI employees in January 1995, thereby breaching their fiduciary obligation to treat all shareholders fairly and evenly, and depriving her, the sole nonemployee shareholder of DMI, of the fair value of her shares. Respondent also asserts that DMI’s majority shareholders and employees improperly awarded themselves excess compensation and bonuses at the end of each fiscal year, thereby stripping the company of any excess cash and depriving her of profits in the company. Additionally, respondent argues that the directors and majority shareholders further diluted her interest in DMI by agreeing to reduce the consideration paid to DMI by Acxiom in exchange for the option of DMI’s shareholders / employees to receive capital stock of Acxiom.
On a motion to dismiss a pleading for failure to state a cause of action, the pleading must be liberally construed in the light most favorable to the pleader (Guggenheimer v Ginzburg, 43 NY2d 268, 274-275 [1977]). The court must accept each and every allegation, and reasonable inferences therefrom as true, and, if the pleader is entitled to recovery based upon any reasonable view of the stated facts, the pleading is legally sufficient (McGill v Parker, 179 AD2d 98, 105 [1st Dept 1992]; 219 Broadway Corp. v Alexander’s, Inc., 46 NY2d 506, 509 [1979]). The court’s inquiry is limited to ascertaining whether the pleading states any cause of action, not whether there is evidentiary support for the claim (Guggenheimer v Ginzburg, supra). Since the court has not elected to treat this as a motion for summary judgment, the affidavits submitted by respondent will be considered for the limited purpose of remedying any defects in the pleading in order to establish that the pleader *508 has a cause of action (Rovello v Orofino Realty Co., 40 NY2d 633, 635-636 [1976]).
The remedy of shareholders dissenting from a merger or a sale of all of the assets of a corporation is to obtain the fair value of their stock through an appraisal proceeding (Business Corporation Law § 910). If the corporation fails to make a written offer to each dissenting shareholder within a specified period or if any dissenting shareholder disagrees with the price offered, the corporation or the dissenting shareholders may institute a special proceeding to determine the rights of such shareholders and to fix the fair value of their shares (Business Corporation Law § 623 [g], [h]).
. In the event that the dissenting shareholders disagree with the corporation as to the price to be paid for their shares and an appraisal proceeding is commenced, Business Corporation Law § 623 (h) (4) provides in part: "The court shall determine whether each dissenting shareholder * * * is entitled to receive payment for his shares. If the * * * court finds that any dissenting shareholder is so entitled, it shall proceed to fix the value of the shares, which, for the purposes of this section, shall be the fair value as of the close of business on the day prior to the shareholders’ authorization date.”
The first prayer for relief set forth in Rubin’s counterclaim is that the court fix the fair value of her shares as of April 28, 1996. The only difference between this request and that sought in the petition is that DMI seeks an evaluation as of April 30, 1996. Since Business Corporation Law § 623 (h) (4) sets the valuation date as "the day prior to the shareholders’ authorization date”, which date was April 29, Rubin is correct in requesting that the date as of which her shares are to be valued is April 28.
Rubin further requests that she be entitled to damages flowing from DMI’s "dilution of her equity in the company * * * [and its] practice of stripping DMI of all excess cash representing profits to its shareholders, paying to themselves excess compensation and depriving Rubin * * * of the fair financial return on her shares”.
On its motion to dismiss, DMI contends that by seeking appraisal rights under Business Corporation Law § 623, Rubin has waived the right to assert such claims. In support of this position, it refers to subdivision (k), which provides: "The enforcement by a shareholder of his right to receive payment for his shares in the manner provided herein shall exclude the enforcement by such shareholder of any other right to which *509 he might otherwise be entitled by virtue of share ownership, except as provided in paragraph (e), and except that this section shall not exclude the right of such shareholder to bring or maintain an appropriate action to obtain relief on the ground that such corporate action will be or is unlawful or fraudulent as to him.”
The "appropriate action” referred to in the foregoing has been held to be "one in which a dissenting shareholder seeks some form of equitable relief’ (Breed v Barton, 54 NY2d 82, 87 [1981]). In that case the Court went on to say that limiting the exception in subdivision (k) to equitable relief "serves the valid function of denying dissenting shareholders the ability to reopen prior appraisal proceedings and again seek the identical relief merely by alleging fraudulent or unlawful corporate conduct in relation to the merger” (at 87; see also, Matter of Cawley v SCM Corp., 72 NY2d 465, 471 [1988]).
However, while a shareholder may not seek an appraisal and also commence a separate action to recover money damages for improper corporate action, this does not mean that claims of breach of fiduciary duty by majority shareholders may not be asserted in the appraisal proceeding. In Schloss Assocs. v Arkwin Indus. (61 NY2d 700 [1984], revg on dissenting opn of Justice Mangano 90 AD2d 149 [2d Dept 1982]), that Justice wrote that "the discharge of the majority’s fiduciary duty to the minority can be weighed in determining fair value” of a dissenting shareholder’s shares in an appraisal proceeding and that "[consequently, an action for damages by a minority shareholder based on the fraudulent or illegal corporate conduct of the majority in discharging its fiduciary duty would be unnecessarily duplicative” (90 AD2d, at 161).
To hold as requested by DMI, and in effect destroy claims of wrongful corporate conduct, would, as stated in Independent Investor Protective League v Time, Inc. (66 AD2d 391 [1st Dept 1979] [which involved a merger]), "be tantamount to paving the way for deliberate corporate pilfering by management and then for the immunization of the guilty officers from liability therefor by their arranging for a merger or consolidation of the corporation into or with another corporation” (at 394). That Court further reiterated that " '[a]n effort should be made to uphold the right of action if it can be legally done, for, otherwise, a means altogether too handy is presented and sanctioned for destroying the rights of minority shareholders.’ ” (Supra.)
Here since Rubin’s only means to now challenge allegedly improper prior corporate actions would be in this appraisal *510 proceeding, to deny that right would violate the public policy referred to in the foregoing case. Accordingly, while the application of the business judgment rule may well demonstrate that there has been no improper corporate action by the majority, as a pleading the court finds the counterclaims state claims that may be asserted in this appraisal proceeding (see, Carolina Gardens v Menowitz, NYLJ, Feb. 29, 1996, at 27, col 6, where Justice Parness of this court considered claims of mismanagement in a Business Corporation Law § 623 proceeding).