[Nos. 59477-0-I; 59571-7-I.   Division One.   June 23, 2008.]

SOUND INFINITI, INC., *on the Relation of Afshin Pisheyar, as a Shareholder in the Corporation*, ET AL., *Petitioners*, v. RICHARD M. SNYDER ET AL., *Respondents*.

---

336

*Daniel C. Montopoli, James A. Krueger,* and *Lucy R. Clifthorne* (of *Vandeberg Johnson & Gandara*), for petitioners.

*William C. Rava, Boyd F. Buckingham, Jr.,* and *Joseph E. Bringman* (of *Perkins Coie, LLP*), for respondents.

¶1 DWYER, A.C.J. — Richard Snyder and David Hannah, the majority shareholders of two closely held corporations, Sound Infiniti, Inc., and Infiniti of Tacoma at Fife, Inc., used reverse stock splits to eliminate Afshin Pisheyar's minority interest in those corporations. In this discretionary review proceeding, we are asked to decide whether the statutory appraisal procedure set forth in chapter 23B.13 RCW, which entitles Pisheyar to receive from the corporations an amount of money equal to the fair value of his former interest, is the sole remedy provided to him in this circumstance, or whether he may also maintain independent claims against the majority shareholders in a forum other than the appraisal proceeding. We hold that Pisheyar's sole remedy is provided by the statutory appraisal process. Accordingly, we affirm the trial court's dismissal of Pisheyar's individual claims against Snyder and Hannah. We also affirm the trial court's ruling that most of Pisheyar's other stated claims were derivative of his shareholder status and that Pisheyar thus lost standing to pursue those claims when he ceased to be shareholder. Because the trial court erred, however, by ruling that Pisheyar could maintain independent, personal claims arising out of the loss of in-kind "perquisites" to which he asserted an entitlement as an incident of his status as a shareholder, we reverse that ruling and remand this action to the trial court for dismissal of those claims.

I

¶2 Snyder and Pisheyar, together with Hannah, formed Sound Infiniti (doing business as Infiniti of Kirkland) to

operate an Infiniti automotive dealership. Ultimately, Hannah came to own 51 percent of Sound Infiniti, with Snyder owning 30 percent and Pisheyar owning 19 percent, respectively. There were no other shareholders. When the three men formed Sound Infiniti, they entered into a "Buy-Sell Agreement between Shareholders and Sound Infiniti," which provided that the shareholders who served as officers of the corporation could "only be terminated for cause based on dishonesty, fraud, misappropriation, theft and/or substance abuse."

¶3 Snyder independently formed another company, S&I of WA, LLC, to acquire the land where Infiniti of Kirkland was to be located, develop the land, and lease it back to Sound Infiniti. At the time of its formation, S&I had three members: Snyder (together with his wife) and two separate irrevocable trusts benefiting the Snyders' children.

¶4 Later, Snyder began to contemplate having S&I sell the property on which Infiniti of Kirkland is located. When Pisheyar and Hannah learned of this, they proposed to Snyder that he instead sell them each a third of S&I in exchange for the same total amount of money he would have received by selling to an outside party. Pisheyar contends that, as part of this transaction, Snyder made an oral agreement to include Pisheyar (as well as Hannah) in any future dealerships that Snyder acquired. Both Snyder and Hannah vigorously dispute that any such agreement was made.

¶5 Nonetheless, the following year, the three men (together with another man, Robert Curtis) did form a new corporation, Infiniti of Tacoma, to operate an Infiniti dealership in Fife. Corporate ownership was arranged such that Snyder owned 51 percent, Hannah 25 percent, Pisheyar 19 percent, and Curtis 5 percent of the total shares. Snyder, Hannah, and Pisheyar also formed another company, RDA Properties, LLC, to purchase and develop the land for the planned Fife dealership and then lease it back to Infiniti of Tacoma. Snyder, Hannah, and Pisheyar each owned a third of RDA.

¶6 All of the parties agreed that, other than serving as the secretary of Sound Infiniti and as a director of Infiniti of Tacoma, Pisheyar would have no role in the operations or management of the corporations. He was to be strictly an investor. The corporations have always been successful and profitable. Contrary to Pisheyar's assertions to the contrary, the trial court found that the corporations have always met the financial requirements imposed by Infiniti of North America, Inc., and complied with their tax obligations.

¶7 In spite of the general good standing of the corporations, the relationship between Pisheyar, on one hand, and Snyder and Hannah, on the other, soured after a confrontation between Snyder and Pisheyar in Snyder's office. Thereafter, Pisheyar began to demand increased information about and increased authority over the day-to-day operations of the dealerships, which Snyder and Hannah declined to provide, pointing out that Pisheyar had never been entitled to operational control. Pisheyar viewed this as Snyder and Hannah excluding him from meetings and decision making that he had a right to be involved in, notwithstanding his nonmanagerial role in the corporations. Pisheyar felt particularly aggrieved by the decision to have Sound Infiniti and Infiniti of Tacoma together loan Snyder $900,000 to purchase land for a separate Nissan dealership in which Pisheyar was not invited to participate.

¶8 Snyder and Hannah deny excluding Pisheyar from any corporate decision making in which he was entitled to participate but agree that by February 2005 they had decided that personal and business conflicts with (and distrust of) Pisheyar had seriously impaired their ability to work with him, prompting their desire to eliminate him as a shareholder.

¶9 Pisheyar filed this action in King County Superior Court on March 9, 2005, in both his individual capacity and derivatively as a shareholder of the corporations. He alleged that Snyder and Hannah "engaged in oppression" of him as a minority shareholder, converted corporate assets,

otherwise breached their fiduciary duties, and breached both their purported oral agreement to include him in Snyder's new Nissan dealership and the LLC agreements of S&I and RDA. After various amendments of his complaint, Pisheyar included damages claims for loss of corporate perquisites and for unlawful termination.[1]

¶10 After their motion to dismiss Pisheyar's claims was denied, Snyder and Hannah called a directors' meeting of Infiniti of Tacoma (of which Pisheyar continued to be a director) "to consider (1) indemnifications, (2) a stock split, and (3) such other matters coming before the board." The indemnification referred to was the advance to Snyder and Hannah of their attorney fees incurred in defending this action. The "stock split" mentioned was not a standard stock split. Rather, Snyder and Hannah proposed amending Infiniti of Tacoma's articles of incorporation to institute a reverse stock split, whereby the 100 outstanding shares of the corporation would be reduced to four. Under this arrangement, Pisheyar's interest in the corporation would be reduced to a fractional share, eliminating him as a shareholder in exchange for a cash payout equivalent to the value of his fractional interest. The same arrangement was made for Sound Infiniti by consent of the directors (Snyder and Hannah) in lieu of a directors' meeting.

¶11 Pisheyar immediately sought, and was granted by the trial court, a temporary restraining order barring Snyder and Hannah from implementing the reverse stock splits. In its order, the trial court also scheduled a hearing to determine whether its injunction should be "modified, extended, or dissolved."

¶12 The trial court held this hearing over two separate days in November and December 2005. The injunction hearing clarified the alleged bases for Pisheyar's shareholder derivative claims—that Snyder and Hannah had harmed the corporations

---

[1] Pisheyar was discharged as the secretary of Sound Infiniti following his filing of this suit against it.

(1) by improperly borrowing money from the Corporations; (2) by directing personnel of Infiniti of Kirkland to improperly report fringe benefit expenses on Form W-2s to the Internal Revenue Service ("IRS"); (3) by applying for and being awarded a new Nissan car dealership in their individual capacities; and (4) by purchasing excessive life insurance on Mr. Hannah's life at corporate expense.

It also clarified the alleged bases for Pisheyar's purported individual claims:

(1) the Individual Defendants' having been awarded a new Nissan car dealership without Pisheyar being offered an opportunity to participate in that business; (2) the Individual Defendants' plan to implement reverse stock splits for both corporations, which would result in Pisheyar owning fractional shares, which the Corporations would purchase from him; and (3) the Individual Defendants' plan to have the Corporations advance payments to them for their attorneys' fees incurred in defending this action.

¶13 After hearing extensive testimony and reviewing voluminous submissions, the trial court found that the loans made to Snyder by the corporations were expressly allowed by the corporate bylaws, did not impair the corporations' ability to meet the capital requirements imposed by Infiniti of North America, and did not otherwise harm the corporations. The court further found that Snyder and Hannah did not direct employees to misrepresent their incomes or expenses to the IRS, that the Nissan dealership opportunity belonged solely to Snyder in his individual capacity, that Hannah's life insurance policy was proper, and that Pisheyar's preemptive rights under Sound Infiniti's buy-sell agreement did not bar the reverse stock split for that corporation. Based on these findings, the trial court concluded that Pisheyar could not demonstrate a likelihood that he would succeed on the merits of his claims or that he otherwise had a right to relief and, accordingly, dissolved the injunction.

¶14 After the reverse stock splits became effective, Snyder and Hannah moved to dismiss Pisheyar's claims on the basis that they were all derivative, and that Pisheyar no

longer had standing to pursue them because he was no longer a shareholder in either corporation.[2] The trial court initially granted the motion in part. It dismissed additional claims on reconsideration. Ultimately, the court also concluded that Pisheyar could not maintain independent, individual claims against Snyder and Hannah for breach of fiduciary duty in relation to either their decision to eliminate his interest in the corporations, or for alleged prior wrongdoing, because the sole remedy available to a shareholder who dissents from a fundamental corporate change is an action for payment of his or her former shares' value:

> The court finds that the remedy available to Plaintiff under RCW 23B.13.020(1)(d) is exclusive, as there is no evidence before the court that the transaction either failed to comply with procedural requirements, or was fraudulent. *See Matthews v. Wenatchee Heights Water Co.*, 92 Wn. App. 541, 555[, 963 P.2d 958] (1998), and Official Legislative History of RCW 23B.13.020: "The [dissenter's rights] remedy is the exclusive remedy unless the transaction fails to comply with procedural requirements or is 'fraudulent.' "

¶15 The trial court did, however, characterize Pisheyar's claims for "alleged deprivation of shareholder 'perquisites', such as demo cars, sports tickets, and the like" as valid individual claims for damages. Accordingly, it declined to dismiss those claims.

¶16 The trial court then certified this series of orders as appropriate for discretionary review by this court, which the parties sought by two separate petitions. The causes were consolidated, and we granted discretionary review of the trial court's orders with respect to three specific issues:

1. Does RCW 23B.13.020 provide an exclusive remedy to a minority shareholder when a closely held corporation implements a reverse stock split?

2. Were Pisheyar's derivative claims properly dismissed?

3. Should Pisheyar's "perquisite" claims also have been categorized as derivative and, accordingly, dismissed?

---

[2] Pisheyar's wrongful termination claim was dismissed in response to a separate motion.

## II

¶17 We review summary judgment orders de novo, engaging in the same inquiry as the trial court. *KMS Fin. Servs., Inc. v. City of Seattle*, 135 Wn. App. 489, 495-96, 146 P.3d 1195 (2006) (citing *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 92-93, 993 P.2d 259 (2000)). Whether a trial court's interpretation of the Washington Business Corporation Act (WBCA), Title 23B RCW, is correct is a question of statutory construction and so is reviewed de novo on appeal. *Ballard Square Condo. Owners Ass'n v. Dynasty Constr. Co.*, 158 Wn.2d 603, 612, 146 P.3d 914 (2006). "The court's fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). Resort to aids of statutory construction such as legislative history is appropriate only if a statute is susceptible to more than one meaning and, thus, is ambiguous. *Campbell & Gwinn*, 146 Wn.2d at 12.

## III

¶18 Pisheyar contends that the trial court erred by barring his damages claims against Snyder and Hannah based on its conclusion that the appraisal remedy set forth in the WBCA is the exclusive remedy for shareholders who dissent from fundamental corporate changes, absent a showing of actual fraud related to the corporate action. We disagree. The unambiguous text of the statute, its legislative history, and controlling case law all compel the conclusion that appraisal is the exclusive remedy for dissenting shareholders in such a circumstance.

¶19 The text of the WBCA expressly provides that appraisal is the exclusive remedy for shareholders who dis-

sent from a fundamental corporate change unless the change was procedurally flawed or was somehow fraudulent:

> A shareholder entitled to dissent and obtain payment for the shareholder's shares under this chapter *may not challenge the corporate action creating the shareholder's entitlement* unless the action fails to comply with the procedural requirements imposed by this title, RCW 25.10.900 through 25.10.955, the articles of incorporation, or the bylaws, or is fraudulent with respect to the shareholder or the corporation.

RCW 23B.13.020(2) (emphasis added). Among the actions that a shareholder is entitled to dissent from, and so obtain the fair value of his or her shares through an appraisal proceeding in the superior court, is "[a]n amendment of the articles of incorporation, whether or not the shareholder was entitled to vote on the amendment, if the amendment effects a redemption or cancellation of all of the shareholder's shares in exchange for cash or other consideration other than shares of the corporation." RCW 23B.13.020(1)(d). Thus, the reverse stock splits undertaken by the boards of Sound Infiniti and Infiniti of Tacoma qualify as corporate actions that Pisheyar was entitled to, and did, in fact, dissent from pursuant to the provisions of chapter 23B.13 RCW.

¶20 Without clearly articulating precisely why he believes that the above-quoted portion of RCW 23B.13.020 is ambiguous, Pisheyar now contends that this statute means something other than what it says—i.e., he contends that he *may,* in fact, challenge the corporate actions that eliminated his shares in a proceeding entirely separate from the ongoing appraisal proceeding currently pending in King County Superior Court.

¶21 In support of this argument, Pisheyar requests that we review the legislative history of the 1989 enactment of RCW 23B.13.020, Laws of 1989, ch. 165, § 141, contending that it demonstrates that, although the legislature specifically provided that procedurally correct corporate actions

may be challenged in court by dissatisfied shareholders only if they are "fraudulent," the legislature in fact intended that term to broadly encompass any allegation of breach of fiduciary duty or unfairness. Without accepting Pisheyar's contention that the statutory language is ambiguous and that recourse to legislative history is appropriate, we conclude that RCW 23B.13.020's legislative history in fact requires the opposite interpretation of the one urged upon us by Pisheyar.

¶22 Section 13.02(b) of the Revised Model Business Corporation Act (MBCA), which provided the template for RCW 23B.13.020(2), states that dissatisfied shareholders may not challenge an appraisal-triggering corporate action outside of a statutory appraisal proceeding unless the corporate action "is *unlawful* or fraudulent" with respect to the shareholder or the corporation. REVISED MODEL BUS. CORP. ACT § 13.02(b) (1984) (emphasis added). The official comment addressing this exclusivity provision, reproduced in the legislative history of the WBCA, states that it "basically adopts the New York formula as to exclusivity of the dissenters' remedy of this chapter." SENATE JOURNAL, 51st Leg., 2d Spec. Sess., at 3088 (Wash. 1989). It continues:

> The remedy is the exclusive remedy unless the transaction fails to comply with procedural requirements or is "fraudulent.". . . If [however] the corporation attempts an action in violation of the corporation law on voting, [or] in violation of a fiduciary duty—to take some examples—the court's freedom to intervene should be unaffected by the presence or absence of dissenters' rights under this chapter[, which] is designed to recognize and preserve the principles that have developed in the case law of Delaware, New York and other states with regard to the effect of dissenters' rights on other remedies of dissident shareholders. See Weinberger v. UOP, Inc., 457 A.2d 701[, 714] (Del. 1983) (appraisal may not be adequate "where fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross or palpable overreaching are involved"); Walter J. Schloss Associates v. Arkwin Industries, Inc., [90 A.D.2d 149,] 455 N.Y.S.2d 844, 847-52 (App. Div. 1982)(dissenting opinion), reversed, with adoption of dissenting opinion, [61 N.Y.S. 700,] 460 N.E.2d 1090[, 472 N.Y.S.2d 605] (Ct. App. 1984).

SENATE JOURNAL, 51st Leg., 2d Spec. Sess., at 3088 (Wash. 1989). Pisheyar contends, not unreasonably, that the references to "fiduciary duty" and "self-dealing" in this history suggest that the legislature (or at least the drafters of the MBCA, who actually wrote this text, which was then copied unaltered into the Senate Journal) intended to preserve independent damages claims.

¶23 What this argument ignores, however, is that the legislature, when it actually enacted RCW 23B.13.020(2), specifically omitted the phrase "unlawful or" that preceded the word "fraudulent" in the original MBCA. This, at minimum, *suggests* that the legislature intended to limit independent remedies for dissenting shareholders to instances of actual fraud. A reading of the actual cases cited in the legislative history, as well as Washington's own case law extant at the time of RCW 23B.13.020(2)'s enactment, confirms this conclusion.

¶24 For example, in the *Weinberger* case cited in the comment, it is not at all clear that the court intended that dissenting stockholders should routinely be able to maintain independent actions for garden-variety breach of fiduciary duty claims in the face of an appraisal-triggering event, rather than simply having the alleged diminution in the shareholder's interest addressed in the appraisal, with equitable relief restricted to the type—an injunction—that Pisheyar attempted but failed to obtain in this action. *See Weinberger*, 457 A.2d at 714 ("a plaintiff's monetary remedy ordinarily should be confined to the more liberalized appraisal proceeding," allowing for other equitable relief in "*certain* cases" (emphasis added)).[3]

---

[3] In fairness to Pisheyar, later Delaware cases independently interpreting *Weinberger* have found that it allows separate suits for damages based on breach of fiduciary duty allegations. *See, e.g., Rabkin v. Phillip A. Hunt Chem. Corp.*, 498 A.2d 1099, 1103-04 (Del. 1985).

But these cases were not decided until after the drafters of the MBCA wrote the comments that were later reproduced en masse in the legislative history of the WBCA. Indeed, what these cases actually tell us is that, while the Delaware and New York approaches were similar (or were thought to be similar) with respect to exclusivity at the time the MBCA was drafted, later Delaware cases have rejected

¶25 More clearly, the dissent in *Walter J. Schloss Associates*, cited in the comment as the "formula" that MBCA § 13.02(b) "basically adopts," unambiguously rejects the proposition that a disgruntled shareholder may maintain a separate damages action for breach of fiduciary duty in the face of an appraisal-triggering event, holding instead that a separate action is allowed only if a remedy *other than damages* is warranted. *See Walter J. Schloss Assocs.*, 90 A.D.2d at 162 (Mangano, J., dissenting) ("an action for damages by a minority shareholder based on the fraudulent or illegal corporate conduct of the majority in discharging its fiduciary duty would be unnecessarily duplicative").

¶26 Existing Washington case law at the time of the WBCA's adoption mirrors this view. In *Matteson v. Ziebarth*, 40 Wn.2d 286, 297, 242 P.2d 1025 (1952), our Supreme Court (examining a precursor to RCW 23B.13.020) held that it was "of the view that, under our own act, the statutory remedy is likewise exclusive as to unfairness or breach of fiduciary duty short of actual fraud." There is nothing in the text or history of the WBCA indicating that the legislature intended to abrogate this holding, rather than codify it. Accordingly, we conclude that when the legislature enacted RCW 23B.13.020, it intended to confirm, rather than modify, the exclusivity of the appraisal remedy. We reaffirmed this rule post-WBCA—albeit without significant discussion—in our opinion in *Matthews*, 92 Wn. App. at 555.

¶27 Pisheyar proposes that we ignore this authority and instead reach the opposite result based on the rationale of the New Mexico Supreme Court's decision addressing a similar situation, *McMinn v. MBF Operating Acquisition Corp.*, 2007 NMSC 40, 142 N.M. 160, 164 P.3d 41. But *McMinn* is not based on the actual language of New Mexico's appraisal statute (also modeled on MBCA § 13.02);

the New York approach expressly adopted by the MBCA drafters. *See, e.g., Berger v. Intelident Solutions, Inc.*, 911 A.2d 1164, 1171-72 (Del. Ch. 2006) (rejecting New York approach).

rather, it relies on the unsupported assertion that the New Mexico legislature intends to amend that statute but simply has not yet gotten around to it. *See McMinn*, 142 N.M. at 169 ("our statute does not reflect legislative attention to the current dilemma," and thus its text may be disregarded). Further, the *McMinn* decision is premised on the fact that, in New Mexico, if appraisal is a dissenting shareholder's sole remedy for breach of fiduciary duty, then "controlling shareholders in close corporations potentially could engage in oppressive tactics in breach of their fiduciary duties, and then escape liability for those actions simply by instituting an appraisal-triggering transaction." *McMinn*, 142 N.M. at 170.

¶28 While this might be true in New Mexico, it is not true in those jurisdictions with the better-reasoned analyses concerning the scope of the appraisal proceeding. *See, e.g., Bingham Consol. Co. v. Groesbeck*, 2004 UT App 434, 105 P.3d 365, 374 ("[T]he court may consider evidence of breach of fiduciary duty in an appraisal to assess the credibility of the majority shareholder's proposed valuation."); *HMO-W Inc. v. SSM Health Care Sys.*, 2000 WI 46, 234 Wis. 2d 707, 728, 611 N.W.2d 250 ("When assertions of misconduct such as unfair dealing are intertwined with the value of shares subject to appraisal, a shareholder may make these assertions within the context of an appraisal action."). Indeed, the dissent in *Walter J. Schloss Associates,* upon which MBCA § 13.02(b) is based, itself adopts this view. *See* 1 F. HODGE O'NEAL & ROBERT B. THOMPSON, O'NEAL AND THOMPSON'S OPPRESSION OF MINORITY SHAREHOLDERS AND LLC MEMBERS § 5:32, at 5-281 n.71 (rev. 2d ed. 2005) (dissent in *Walter J. Schloss Associates* stands for proposition that "majority shareholder's fiduciary duty to the minority can be weighed in determining fair value"); *see also Albert Trostel & Sons Co. v. Notz*, 536 F. Supp. 2d 969, 982 (E.D. Wis. 2008) (applying *HMO-W*, 234 Wis. 2d 707); *Steinberg v. Amplica, Inc.*, 42 Cal. 3d 1198, 1209, 729 P.2d 683, 233 Cal. Rptr. 249 (1986) ("nothing in the appraisal statutes to prevent vindication of a shareholder's claim of

misconduct in an appraisal proceeding"); *Fleming v. Int'l Pizza Supply Corp.*, 676 N.E.2d 1051, 1057 (Ind. 1997) ("legislature did not foreclose the ability of dissenting shareholders to litigate their breach of fiduciary duty or fraud claims within the appraisal proceeding").

¶29 A similar scope of proceeding applies in Washington appraisal actions. In valuing the shares of an ousted shareholder, the court overseeing an appraisal action brought pursuant to chapter 23B.13 RCW may account for all prior reductions in the value of those shares caused by actual breaches of fiduciary duty, including the extraction of unreasonable salaries, misuse of corporate funds, or other self-dealing. Put another way, in order to ascertain the present value of the dissenting shareholder's interest in the corporation, the court may consider any majority shareholder misconduct affecting the minority shareholder's interest that occurred before the point in time that the appraisal-triggering transaction occurred. To be clear: the court is *not* limited to determining the value of the minority shareholder's interest at the fixed point in time when the appraisal-triggering action occurred, without reference to prior actions by the majority that may have resulted in that value being reduced.

¶30 This being the case, both the plain text and the legislative history of RCW 23B.13.020 make clear that the legislature intended appraisal to be the exclusive remedy for shareholders who dissent from fundamental corporate changes. Contrary to Pisheyar's contention, the pending appraisal proceeding may properly determine the value of his former interests in the corporations, providing for such diminution in the value of those interests that Pisheyar can demonstrate resulted from breaches of fiduciary duty on the part of Snyder or Hannah. Because the WBCA expressly prohibits a separate and duplicative damages action, we affirm the trial court's ruling on this question.

## IV

¶31 Pisheyar next contends that the trial court erred by dismissing his derivative claims following his loss of shareholder status as a result of the reverse stock splits. Because, however, neither the language of Civil Rule 23.1 nor applicable case law supports the proposition that a person who is no longer a shareholder may maintain a shareholder derivative claim, we reject this argument.

¶32 CR 23.1 provides that a plaintiff stating a shareholder derivative claim must allege that he or she "was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law." Pisheyar points to this language for the proposition that the rule only requires him to be a shareholder *at the time* that his derivative claim was filed. Thus, he argues, he may not thereafter lose standing due to corporate actions beyond his control that deprive him of shareholder status. We disagree.

¶33 Pisheyar ignores that CR 23.1 goes on to provide that "[t]he derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders . . . similarly situated in enforcing the right of the corporation." Thus, under the plain text of the rule, in order to maintain a derivative claim after its filing, Pisheyar was required to continue to "fairly and adequately represent the interests" of *similarly situated shareholders.* This presupposes that his interest as a shareholder continues throughout the litigation. Because it did not, Pisheyar lost his standing to maintain derivative claims on behalf of the shareholders of Sound Infiniti and Infiniti of Tacoma.

¶34 Washington case law accords with this conclusion, as do the decisions of the majority of other jurisdictions. *See Haberman v. Wash. Pub. Power Supply Sys.,* 109 Wn.2d 107, 149, 744 P.2d 1032, 750 P.2d 254 (1987) ("Standing to bring a stockholder derivative claim requires a proprietary

interest in the corporation whose right is asserted."); *see also Lewis v. Anderson*, 477 A.2d 1040, 1046 (Del. 1984) (adopting "nearly universally" held view that "a derivative shareholder must not only be a stockholder at the time of the alleged wrong and at time of commencement of suit but . . . must also maintain shareholder status throughout the litigation").

¶35 Here, Pisheyar could have maintained his status as a shareholder, and thus maintained his standing to pursue his derivative claims outside of the appraisal context, had he demonstrated to the trial court a likelihood of his success on those claims, thus justifying the continuance of the temporary injunction. He decidedly failed to do so. The trial court ruled that Pisheyar produced "no credible, admissible evidence that either of the Corporations were harmed by the loans to Snyder, . . . no credible, admissible evidence that the Corporations were harmed by any alleged improper reporting to the IRS," no "competent evidence that the Nissan dealership has anything to do with the Infiniti dealerships [and thus] nothing from which the Court could conclude that it was a corporate opportunity," and "no evidence that he or Infiniti of Kirkland has been harmed by Infiniti of Kirkland's decision to purchase the key-man policy on Hannah's life."

¶36 Because Pisheyar had a full and fair opportunity to demonstrate to the trial court that there was a likelihood that the actions of Snyder and Hannah had damaged the corporations, and thus enjoin the reverse stock split that eliminated his interest in the corporations, there is no basis to depart from the well-established rule that a shareholder must remain a shareholder in order to maintain corporate derivative claims. Accordingly, we affirm the trial court's ruling dismissing Pisheyar's derivative claims for lack of standing.

V

¶37 The final issue before us is whether the trial court erred by allowing Pisheyar's claims alleging loss of

corporate perquisites to proceed after both the entry of summary judgment on Pisheyar's wrongful termination claim and the cessation of Pisheyar's ownership of stock in the corporations. We conclude that, to the extent that Pisheyar's claims for loss of corporate perquisites arose out of his status as an officer or director of the corporations, those claims have already been dismissed as a result of the trial court's entry of summary judgment dismissing Pisheyar's claim that he was wrongfully terminated. We further conclude that, to the extent that Pisheyar's purportedly personal claims for damages were for benefits denied him because he ceased to be a shareholder, those claims are also not cognizable outside of the appraisal context and so must be dismissed.

¶38 " '[A] stockholder may maintain an action in his own right against a third party . . . when the injury to the individual resulted from the violation of some special duty owed to the stockholder *but only when that special duty had its origin in circumstances independent of the stockholder's status as a stockholder.' " Sabey v. Howard Johnson & Co.,* 101 Wn. App. 575, 585, 5 P.3d 730 (2000) (emphasis added) (quoting *Hunter v. Knight, Vale & Gregory,* 18 Wn. App. 640, 646, 571 P.2d 212 (1977)). Put another way, Pisheyar may maintain personal damage claims against third parties—such as Snyder and Hannah in their individual capacities—for the deprivation of perquisites only if his alleged entitlement to them arises from *something other than his shareholder status,* such as his status as secretary of Sound Infiniti or his directorship with Infiniti of Tacoma. And, inasmuch as Pisheyar might have had personal damage claims for the loss of corporate perquisites arising out of either of these positions, those claims were dismissed when the trial court entered summary judgment against him on his wrongful termination claim. Pisheyar retains the right to appeal that ruling after the entry of final judgment, but we have not granted discretionary review of that ruling and so do not further address it herein.

¶39 We did, however, grant discretionary review of the issue of whether, as the trial court ruled, Pisheyar could

assert personal damage claims for "alleged deprivation of *shareholder* 'perquisites.' " (Emphasis added.) There is evidence in the record tending to show that Pisheyar's alleged entitlement to benefits such as "demo cars" and "sporting tickets" was due to his status as a shareholder. *See* Buy-Sell Agreement for Infiniti of Tacoma ("Each of the *Shareholders* shall be entitled to a new 'demo' car of his choice from time to time." (emphasis added)). In effect, these entitlements are nothing more than rights to "in-kind dividends," and Pisheyar may seek recompense for their loss, like the loss of any shareholder benefit, only in the proper forum— the appraisal proceeding.

¶40 Insofar as Pisheyar had any individual entitlement to corporate perquisites related to his status as a shareholder, we hold that the trial court erred by allowing claims alleging the deprivation of such an entitlement to proceed in a separate, duplicative damages action. Accordingly, we remand this cause with instructions that these claims be dismissed. Any diminution in Pisheyar's remuneration as a shareholder (including loss of in-kind shareholder benefits embodied in the perquisites of which he claims to have been deprived) must be addressed in the proper forum—the pending appraisal proceeding.

¶41 Affirmed in part, reversed in part, and remanded.

APPELWICK and LEACH, JJ., concur.

Review granted at 165 Wn.2d 1019 (2009).