INTERNATIONAL TELECHARGE,
INC., a Delaware corporation,
Respondent Below, Appellant,

v.

BOMARKO, INC., a Delaware Corporation, James D. Azzar, Michael Bruce Azzar, Extrusions Division, Inc., and Painewebber, Inc., Petitioners Below, Appellees.

Ronald J. Hann, Long Distance Communications, Inc. and Oncor Communications, Inc., Defendants–Below, Appellants,

v.

Bomarko, Inc., a Delaware Corporation, James D. Azzar, Michael Bruce Azzar, Extrusions Division, Inc., and Painewebber, Inc., Plaintiffs–Below, Appellees, Cross–Appellants.

No. 622, 1999.

Supreme Court of Delaware.

Submitted: June 13, 2000.
Decided: Dec. 1, 2000.

P. Clarkson Collins, Lewis H. Lazarus, Michael A. Weidinger, Morris, James, Hitchens & Williams, LLP, Wilmington, Delaware, of counsel, Michael R. Klein, Leon B. Greenfield, Wilmer, Cutler & Pickering, Washington, D.C., for appellants, Ronald J. Haan, Long Distance Communications, Inc. and Oncor Communications, Inc.

Ronald A. Brown, Jr., Prickett, Jones & Elliott, Wilmington, Delaware, for appellees, cross-appellants.

Before VEASEY, C.J., WALSH, and HOLLAND, JJ.

PER CURIAM:

In this appeal of the judgment of the Court of Chancery in a breach of fiduciary duty action, we review the findings of fact, conclusions of law and determination of the remedy of that Court after lengthy proceedings below including a trial on the merits. In our review, we have examined the detailed 59–page opinion of the trial court,[1] the briefs of the parties, contentions at oral argument in this Court and the record before the trial court.

The issues here are peculiarly fact-intensive. Thus, our review of the factual findings is deferential. That is, we defer to the determination of the trial judge if the findings are supported by the record and the conclusions are the product of an orderly and logical deductive pro-

---

1. *Bomarko, Inc. v. Int'l Telecharge, Inc.,* Del. Ch., C.A. No. 13052, Lamb, V.C. (Nov. 16, 1999), 1999 WL 1022083 ("Mem.Op.").

cess.[2] If so, we would affirm those findings whether or not we would have come to the same conclusions. Likewise, we defer substantially to the discretion of the trial court in determining the proper remedy—in this case the damages—to be awarded for a found violation of the duty of loyalty by a corporate fiduciary. Our review of legal issues is *de novo*.[3]

In this case, we have concluded that the issues are all factual and discretionary, both as to the appeal and the cross-appeal. We conclude that the record supports the factual findings of the trial court, that those findings are the product of an orderly and logical deductive process, that the remedies awarded and denied are within the discretion of the Court of Chancery, and that discretion was not abused.

### Facts

As noted, the Court of Chancery issued a detailed 59–page opinion setting forth the facts of this case. Those findings will not be reiterated here. Only a brief summary is necessary for purposes of this Opinion.

Plaintiffs in the Court of Chancery were owners of 11% of the outstanding common stock of International Telecharge, Inc. ("ITI"). They commenced a statutory appraisal action arising out of a merger of ITI into a corporation controlled by Ronald J. Haan who was ITI's Chief Executive Officer and controlling stockholder. As a result of the merger, plaintiffs were cashed out for $0.30 per share.

During discovery in the appraisal action plaintiffs uncovered evidence of a breach of fiduciary duty by Haan in connection with the merger. As a result, they commenced a second action for breach of fiduciary duty against Haan and the corporations he controls. The two actions were consolidated for discovery and trial.

In essence, plaintiffs claim that the following actions by Haan constituted breaches of his fiduciary duty of loyalty that resulted in injury requiring relief in damages: his subversion of ITI's negotiations with Bell Atlantic in May–June 1992, and his failure to disclose those actions to the Board. As a remedy plaintiffs sought rescissory damages equal to the fair value of their ITI shares. They also urged the Court to exercise its authority to order disgorgement of Haan's alleged $60 million of post-merger profits.

Following trial, extensive post-trial briefing and argument, judgment was entered in favor of plaintiffs and the appraisal action was dismissed as moot. At issue on this appeal is (1) whether the Court of Chancery improperly applied a summary judgment standard, (2) whether the court made erroneous factual findings, and (3) whether the court's award of damages was an abuse of discretion. Also at issue on cross-appeal is whether the court erred by declining to order disgorgement of Haan's alleged $60 million in post-merger profits.[4]

### Burden of Proof

On appeal, both parties agree that the entire fairness test is the appropriate standard. But defendants contend that the Court of Chancery improperly applied a summary judgment standard in this case. In short, defendants' argument lacks merit because the court did not apply a summary judgment standard.

The Court of Chancery explicitly articulated the entire fairness test it was applying:

> ... Haan must bear the burden of proof on the issue of entire fairness and, for the same reasons, that *I will draw all reasonable inferences in favor of the plaintiffs.* Thus, to prevail Haan must

---

**2.** *Levitt v. Bouvier,* Del.Supr., 287 A.2d 671, 673 (1972).

**3.** *Brehm v. Eisner,* Del.Supr., 746 A.2d 244, 253 (2000).

**4.** A more detailed recitation of the facts in this case can be found in the opinion of the Court of Chancery. *See* Mem. Op. at 2–27, 1999 WL 1022083 *1–*13.

show by a preponderance of the evidence that Bell Atlantic and ITI would not have come to terms on financing had he not improperly interfered in that relationship.[5]

Defendants take the following statement of the Court of Chancery—"I will draw all reasonable inferences in favor of the plaintiffs"—out of context in an attempt to undermine the Court's entire fairness analysis. Here, the Court made the factual determination that Haan committed acts of disloyalty against ITI and then determined whether, despite the disloyal acts, the transaction was entirely fair to the corporation's stockholders.[6] Even if we assume the language defendants cite was inartful there is no indication that the Court applied anything other than the entire fairness standard throughout its opinion.

### Factual Findings

■ The record supports the determination of the Court of Chancery that Haan engaged in unfair dealing. The court found that Haan thwarted ongoing negotiations between Bell Atlantic and ITI because, following the creation of a special committee to handle the financing search, he unilaterally submitted to Bell Atlantic a counter-proposal, which was unknown to the special committee. These efforts undermined ITI's attempts to seek alternatives and perhaps secure a more favorable deal. In addition, the court supported its finding of unfair dealing with the following factors: (1) misinformation given to the special committee, (2) the lack of meaningful negotiations, and (3) stockholders were deprived of critical information concerning Haan's contacts with Bell Atlantic.[7]

■ Even if we assume Haan's conduct had no effect on ITI's ability to receive financing, this fact is not relevant to the fair dealing prong of the entire fairness inquiry. Under Delaware law, the concept of entire fairness has two prongs: fair dealing and fair price.[8] The fair dealing prong of the entire fairness inquiry relates to how a transaction is structured and negotiated. The fair price prong "relates to the economic and financial considerations of the proposed merger." When making a determination of a transaction's entire fairness courts examine the transaction as a whole looking at both fair price and fair dealing, without focusing on one component over another.[9] The court's factual findings were supported by the record and were the product of an orderly and logical deductive process.

### Damages

■ This Court reviews for an abuse of discretion an award of damages by the Court of Chancery. In determining damages, the powers of the Court of Chancery are very broad in fashioning equitable and monetary relief under the entire fairness standard as may be appropriate, including rescissory damages.[10] Defendants' challenges fail largely because of this broad discretion. Furthermore, unlike an appraisal action, assessing damages in this case unavoidably requires the court to make judgments concerning liability and other contingencies. In an appraisal action, a court must determine the fair value of the stockholders' shares at the time of the merger. The question faced by the trial court in the instant action was determining what ITI's stockholders' "shares would have been worth at the time of the Merger if Haan had not breached his fidu-

---

**5.** *Id.* at 34. (emphasis added).

**6.** *See id.* at 31–32.

**7.** *See id.* at 32, 40.

**8.** *See Weinberger v. UOP, Inc.,* Del.Supr., 457 A.2d 701, 711 (1983).

**9.** *See id.; see also Kahn v. Tremont Corp.,* Del.Supr., 694 A.2d 422, 432 (1997).

**10.** *See Weinberger v. UOP, Inc.,* 457 A.2d at 714.

ciary duties."[11] The different focus of the damages inquiry in the instant case seems logical when one considers that Haan's breach of his duty of loyalty to ITI, in all likelihood, influenced the fairness of the merger transaction and concomitantly the price ITI's stockholders received for their shares. The Court of Chancery has greater discretion when fashioning an award of damages in an action for a breach of the duty of loyalty than it would when assessing fair value in an appraisal action.

 The Court of Chancery here concluded that "what plaintiffs are entitled to receive is, at a minimum, what their shares would have been worth at the time of the Merger if Haan had not breached his fiduciary duties" and the "only good way to approximate that value is to value ITI as of the time of the Merger with the Services Agreement and the debt restructuring agreement in place but without giving any effect to any contingency Haan attached to them."[12] In formulating an award of $1.51 per share, the court used generally accepted valuation methodology but with a few appropriate modifications, one of which was to reduce the award based on a realistic assessment of the differences in the growth expectation between ITI and the group of comparable companies that had formed the basis of the preliminary valuation of $5.05 per share. Using the downward adjustment the Court of Chancery concluded that the fair value per share was $1.27 without valuing the company's preexisting $8 million claim against Haan.[13] The Court ultimately concluded that this claim had a value of $0.24 per share.[14] Finally, the Court awarded $1.51 per share plus 8.37% simple interest

from the date of the merger to the date of the judgment.[15]

Defendants claim that the damages awarded by the Court of Chancery was an award of "punitive" damages because the Court's assessment of ITI's value was not realistic. This claim is unconvincing. Defendants' argument relies on some of the language the Court of Chancery used when describing its standard for assessing damages. The Court of Chancery stated in part: "... where, as is true here, issues of loyalty are involved, potentially harsher rules come into play."[16] In addition, the trial court correctly cited the following language from this Court's opinion in *Thorpe by Castleman v. CERBCO, Inc.*: "Delaware law dictates that the scope of recovery for a breach of the duty of loyalty is not to be determined narrowly.... The strict imposition of penalties under Delaware law are designed to discourage disloyalty."[17] Taking these statements of the court out of context, defendants contend that the Court of Chancery assessed punitive damages. These statements stand for nothing more than the proposition that the imposition of damages should eliminate the possibility of profit flowing to defendants from the breach of the fiduciary relationship.[18]

The court's analysis does not run afoul of general valuation principles under Delaware law by taking into account all "elements of future value ... known or susceptible of proof as of the date of the merger."[19] Accordingly, we find no abuse of discretion in the determination of an appropriate remedy.

### Cross–Appeal on Disgorgement

 On cross-appeal, plaintiffs contend that the Court of Chancery had no discre-

---

11. Mem. Op. at 46.

12. *Id.*

13. *Id.* at 50–51.

14. *Id.* at 57.

15. *Id.* at 59.

16. *Id.* at 45.

17. Del.Supr., 676 A.2d 436, 445 (1996) (citations omitted).

18. *See id.* at 445.

19. *Weinberger v. UOP, Inc.*, 457 A.2d at 713.

tion to do anything but order disgorgement under Delaware law. This argument is unconvincing because it is not supported by Delaware law or the record.

In this case, the trial court determined that "[b]ecause my valuation of ITI already takes into account the benefits of the debt restructuring and, as to these plaintiffs, deprives Haan of the value of the Merger, any order requiring disgorgement would constitute a double recovery for plaintiffs." [20]

Plaintiffs incorrectly rely on this Court's decision in *Thorpe* for the proposition that the court's finding of a breach of the duty of loyalty required disgorgement in the instant case. Instead, *Thorpe* stands simply for the proposition that "a fiduciary [should] not profit personally from his conduct, and that the beneficiary not be harmed by such conduct." [21] The Court of Chancery, within its broad discretion, properly decided not to order disgorgement. Moreover, the record in this case does not support disgorgement.

### Conclusion

Based on our thorough analysis of the record and the contentions of the parties on appeal, we conclude that the factual findings of the Court of Chancery are supported by the record and are the product of an orderly and logical deductive process. We further conclude that the trial court's determinations on damages, including the decision not to require disgorgement, did not constitute an abuse of discretion. Accordingly, we affirm the judgment of the Court of Chancery.

---

**20.** Mem. Op. at 58.

**21.** 676 A.2d at 445.