2007-NMSC-040

164 P.3d 41

**Rory A. McMINN, Plaintiff–Petitioner,**

v.

**MBF OPERATING ACQUISITION COR- PORATION, a New Mexico corporation, Frank L. Sturges, and Mark W. Daniels, Defendants,**

and

**MBF Operating, Inc., Defendant– Respondent.**

No. 29,725.

Supreme Court of New Mexico.

June 27, 2007.

Sanders, Bruin, Coll & Worley, P.A., Clay H. Paulos, Ian D. McKelvy, Roswell, NM, for Petitioner.

Tucker Law Firm, P.C., Steven L. Tucker, Santa Fe, NM, for Respondent.

## OPINION

BOSSON, Justice.

{1} Plaintiff Rory A. McMinn ("McMinn") was a non-controlling shareholder in a closely-held corporation whose interest in the corporation was eliminated by the controlling shareholders through the use of a "freeze out" merger transaction. That transaction involved two steps. First, the controlling shareholders formed a "shell" corporation, an entity set up for the sole purpose of merging with the existing corporation, of which they were the sole directors. Second, the controlling shareholders caused the shell corporation to merge with the existing corporation, with one condition being the "freeze out" of McMinn, the non-controlling shareholder, by the forced cancellation of his shares through a cash purchase. This appeal involves the application of New Mexico's statutes governing fundamental corporate transactions to this merger.

**The New Mexico Dissent and Appraisal Statutes**

{2} Adopted in 1983, NMSA 1978, § 53-15-3 (1983) gives shareholders who dissent from mergers the right to obtain payment for the fair value of their shares. If the corporation and the dissenting shareholders cannot agree on that value, the statute allows either party to seek a judicial determination of fair value in a court proceeding called an "appraisal." *See Smith v. First Alamogordo Bancorp, Inc.,* 114 N.M. 340, 343, 838 P.2d

494, 497 (Ct.App.1992). The statute does not define "fair value" or the method by which such value is to be calculated. With regard to the appraisal proceeding itself, NMSA 1978, § 53–15–4(E) (1983) simply states that "[a]ll shareholders who are parties to the proceeding shall be entitled to judgment against the corporation for the amount of the fair value of their shares," and the court may appoint one or more appraisers "to receive evidence and recommend a decision on the question of fair value."

{3} The effect of the relevant statutes on the rights of non-controlling shareholders, such as McMinn, who object to a merger is twofold: (1) they eliminate the common law requirement that a merger be unanimously approved and instead require the support of only a majority of shareholders; and (2) in exchange for the dissenting shareholders' loss of their right to veto the transaction, the statutes provide a means for dissenting shareholders to be paid the fair value of their shares. NMSA 1978, § 53–14–3(B) (1983) (providing that majority can approve merger); § 53–15–3 (describing right of dissenting shareholders to obtain payment for their shares).

{4} At issue in this case is the exclusivity provision in Section 53–15–3(D), which states as follows:

> A shareholder of a corporation who has a right under this section to obtain payment for his shares shall have no right at law or in equity to attack the validity of the corporate action that gives rise to his right to obtain payment, nor to have the action set aside or rescinded, except when the corporate action is unlawful or fraudulent with regard to the complaining shareholder or to the corporation.

We must determine, as a matter of first impression, whether this exclusivity provision applies to the merger transaction carried out by MBF's controlling shareholders, designed to eliminate the interest of the company's non-controlling shareholder. In making this determination, we inquire into whether the legislature intended the statutory remedy— the determination of fair cash value in an appraisal proceeding—to be the only remedy for non-controlling shareholders in McMinn's position, to the exclusion of other common law claims such as breach of fiduciary duty. We hold that the legislature did not intend an appraisal to be the exclusive remedy under the circumstances of this case. The Court of Appeals having held otherwise, we reverse and affirm the jury verdict below.

## BACKGROUND

{5} In 1992, McMinn, Frank L. Sturges ("Sturges"), and Mark W. Daniels ("Daniels") formed MBF Operating Inc. ("MBF"), a New Mexico corporation engaged in the business of pipeline inspection services. The shares of MBF were divided equally between the three shareholders and it was agreed that all three would share in the profits of the company.

{6} In 2001, McMinn was appointed to the state Public Regulation Commission ("PRC") and resigned his employment with MBF due to the potential conflict of interest created by the fact that MBF is regulated by the PRC. However, McMinn retained his shares in MBF, placing the shares in a blind trust ("Trust"), effective April 30, 2001. The three original shareholders had no written shareholders' agreement or buy-out agreement specifying how to deal with a shareholder who ceased to be employed by the company.

{7} After McMinn's resignation, the trustee of his shares ("Trustee") requested that MBF institute a dividend policy so that McMinn could share in the profits now that he was only a passive shareholder, but no such policy was adopted. During the time that McMinn remained a passive shareholder, the Trustee complained that MBF was engaged in oppressive conduct toward McMinn and that Sturges and Daniels were engaged in self-dealing, including payment of excessive salaries to themselves. The Trustee requested that Sturges and Daniels buy out McMinn's interest in MBF and suggested that, if they did not want to make a fair offer for the stock, liquidation of the company might be an alternative. MBF offered to buy out the Trust, but never made an offer more than the liquidation value of the company. The Trust indicated that it may be necessary to force an involuntary dissolution if the oppressive conduct continued and if all

MBF offered was liquidation value for McMinn's shares.

{8} In January of 2002, MBF retained Harold Wells ("Wells") to value MBF for the purpose of a merger that would eliminate McMinn's interest in the company. Wells' valuation would provide the basis for the cash amount MBF would pay McMinn for his shares. Wells was not a certified appraiser, had little financial experience, and no accounting background or experience. On March 4, 2002, Wells prepared a report valuing MBF at $300,000. Based on Wells' report, Daniels and Sturges valued MBF and approved a plan of merger designed to force McMinn out of the company. At this time, the Trust was unaware of Wells or the plan of merger being orchestrated.

{9} On March 25, 2002, in lieu of a special meeting, MBF, through Daniels and Sturges, agreed to the "necessity of separating the Corporation and its business affairs" from McMinn and approved the plan of merger. The Trust first learned of the plan of merger four days later. Under the plan, Sturges and Daniels filed Articles of Incorporation on April 17, 2002, forming MBF Acquisition Corp.; Sturges and Daniels were the sole directors and shareholders of the new corporation. Two days later, on April 19, 2002, the new corporation was merged out of existence.

{10} A meeting was held on April 18, 2002, in the office of MBF's counsel in Albuquerque, one week after the Trust received a copy of Wells' evaluation. Sturges and Daniels approved the plan of merger over the objections of the Trustee. Under the plan, McMinn was to receive approximately $134,000 for his entire 1/3 equal share of MBF. The Trustee objected that the plan of merger was unlawful and the valuation deliberately undervalued; the Trust memorialized these objections in a letter to counsel for MBF the following day. The Trust also demanded issuance of shares in the surviving company, but was refused. On April 30, 2002, MBF wrote a letter to McMinn advising that the merger had been approved, that McMinn had made no written demand for payment of fair value, and that McMinn was therefore bound by the terms of the merger. MBF enclosed with this letter a certified check for $134,411.38 for payment of McMinn's shares in accordance with the merger. McMinn rejected the check.

{11} The Trust filed suit against MBF, Sturges, and Daniels, in September of 2002 for breach of fiduciary duty, oppressive conduct, and prima facie tort. McMinn's term on the PRC ended in January of 2003, and he was substituted in as Plaintiff in the case. McMinn's claims were based on conduct that occurred before, during, and after the merger, for which McMinn sought compensatory damages, including lost equity and lost profits of the company, and punitive damages. MBF moved for summary judgment, arguing that Section 53–15–3 provided McMinn's exclusive remedy as a dissenting shareholder, but the judge denied the motion and proceeded to trial.

{12} At trial, McMinn argued that Daniels and Sturges had paid themselves excessive salaries and devalued the company in breach of their fiduciary duties to McMinn and then, through the use of the merger, tried to force McMinn out at an unfairly low price based on his wrongfully devalued shares. MBF countered that it had instituted the merger simply to resolve a stalemate between the parties as to the price MBF would pay McMinn to buy him out. McMinn responded to the contrary that the merger was designed to deprive him of his fair share of the profits of the company in contravention of the shareholders' agreement. MBF was permitted to instruct the jury on the business judgment rule [1] and argue that its actions were lawful

---

1. The business judgment rule provides as follows:

    If in the course of management, directors arrive at a decision, within the corporation's powers (inter vires) and their authority, for which there is a reasonable basis, and they act in good faith, as the result of their independent discretion and judgment, and uninfluenced by any consideration other than what they honestly believe to be the best interests of the corporation, a court will not interfere with internal management and substitute its judgment for that of the directors to enjoin or set aside the transaction or to surcharge the directors for any resulting loss.

and based on a valid business purpose. The jury found that MBF had breached its fiduciary duty to McMinn and awarded McMinn $864,000 in compensatory damages as well as $20,000 in punitive damages against MBF.

{13} MBF appealed and the Court of Appeals reversed the judgment in favor of MBF, ruling that statutory appraisal was McMinn's exclusive remedy. *McMinn v. MBF Operating, Inc.*, 2006–NMCA–049, 139 N.M. 419, 133 P.3d 875. In reaching this conclusion, the Court of Appeals first found that the appraisal statute created a new right and remedy not available at common law, and therefore "there is a presumption that the remedy is exclusive." *Id.* ¶ 19. The Court found that there was no evidence of contrary legislative intent that would rebut this presumption and, thus, the legislature intended the appraisal remedy to be exclusive. *Id.* The Court then went on to review decisions of other jurisdictions, concluding that they were in line with its holding. *Id.* ¶ 20. Finally, the Court examined whether McMinn's claims fell within the statutory exception for fraud or unlawful conduct and found that they did not. *Id.* ¶¶ 29–33. Thus, the Court held that "[b]ecause [McMinn] failed to take advantage of his statutory right to appraisal, he took the risk of being held to the amount offered in the merger and is now bound by the terms of the corporate action." *Id.* ¶ 36. We disagree with the Court of Appeals' interpretation of the appraisal statute and its analysis of the transaction in this case.

## STANDARD OF REVIEW

{14} We must determine whether Section 53–15–3 provides the exclusive remedy for a non-controlling shareholder in a close corporation who dissents from a merger designed to eliminate his interest in the company. This is an issue of statutory interpretation we review de novo. *See State v. Smith*, 2004–NMSC–032, ¶ 8, 136 N.M. 372, 98 P.3d 1022. Our primary goal in interpreting statutes is to ascertain and give effect to legislative intent. *See Cummings v. X–Ray Assocs. of N.M., P.C.*, 1996–NMSC–035, ¶ 44, 121 N.M. 821, 918 P.2d 1321. "To determine

legislative intent, we look not only to the language used in the statute, but also to the purpose to be achieved and the wrong to be remedied." *Hovet v. Allstate Ins. Co.*, 2004–NMSC–010, ¶ 10, 135 N.M. 397, 89 P.3d 69.

## EXCLUSIVITY OF APPRAISAL
### There is No Presumption of Exclusivity

{15} The Court of Appeals' opinion turned on a presumption of exclusivity arrived at by determining that the dissent and appraisal statutes created a new right and remedy not available at common law. Based partially on this presumption, the Court of Appeals determined that the legislature intended the appraisal remedy to be exclusive, barring any claims for breach of fiduciary duty by a dissenting shareholder that arise out of a freeze out merger transaction.

{16} We think this approach to interpreting the statute is too confined in its focus solely on the text, without a view toward the underlying goals, purposes, and policy of the statutory remedy. Strict application of such a presumption overlooks the purpose of the appraisal statute, which, as we discuss in depth later in this Opinion, was designed to protect dissenting shareholders from oppression by the majority; not make them even more vulnerable to the majority. Appraisal must be viewed in its historical context and addressed not simply as a new right and remedy unavailable at common law, but rather as a right granted in exchange for the loss of a right at common law—the right of a dissenting shareholder to veto and block a merger.

{17} Further, we view our appraisal statute within the context of common law fiduciary duties that exist outside of New Mexico's corporations statutes, and which are essential to maintaining the integrity of business relationships in New Mexico. *See Walta v. Gallegos Law Firm, P.C.*, 2002–NMCA–015, 131 N.M. 544, 40 P.3d 449. Thus, any construction of our statutes that would eliminate such common law claims in the context of fundamental business transactions must be

*White on Behalf of Banes Co. Derivative Action v. Banes Co.*, 116 N.M. 611, 615, 866 P.2d 339, 343

(1993) (quoted authority omitted).

approached with caution. *See Sims v. Sims,* 1996–NMSC–078, ¶ 22, 122 N.M. 618, 930 P.2d 153 (noting that statutes are to "be read strictly so that no innovation upon the common law that is not clearly expressed by the legislature will be presumed").

## Fiduciary Duties of Directors and Shareholders in Close Corporations

{18} To aid our evaluation of the exclusivity provision, we first turn our attention to the nature of the fiduciary duties owed by shareholders to one another in a closely held corporation. The jury found that MBF breached its fiduciary duty to McMinn, a verdict which MBF does not claim was unsupported by substantial evidence. Instead, MBF argues and the Court of Appeals agreed that the availability of the appraisal remedy operates to cut off common law claims for breach of fiduciary duty and limit McMinn to recovery of the fair value of his shares at the time of the merger. We therefore begin by looking at what claims are foreclosed by the Court of Appeals' construction of the appraisal statute to assist us in determining whether appraisal was intended to be an all-encompassing remedy to the exclusion of such claims.

{19} New Mexico has recognized an enforceable fiduciary duty between shareholders of a close corporation outside of the corporation statute's provision for relief from illegal, oppressive, or fraudulent conduct. *Walta,* 2002–NMCA–015, ¶ 30, 131 N.M. 544, 40 P.3d 449. As the Court of Appeals observed in *Walta,*

> [the] characteristics of close corporations may sometimes be abused to allow majority shareholders to take advantage of minority shareholders. Minority shareholders are vulnerable to a variety of oppressive devices. These devices include refusing to declare dividends, draining of corporate earnings in the form of exorbitant salaries and bonuses paid to majority shareholders, denying minority shareholders corporate offices and employment, and selling corporate assets to majority shareholders at reduced prices.

*Id.* ¶ 33. Some of these same oppressive devices appear in McMinn's complaint. For instance, McMinn alleged that MBF refused to declare dividends in contravention of the shareholders' agreement that all would share in the profits of the company, and that the controlling shareholders were paying themselves excessive salaries.

{20} To address the use of such tactics, courts have imposed fiduciary duties on shareholders in close corporations similar to those owed by partners to one another. *See id.* ¶ 37. The relationship between shareholders in a close corporation is one of trust and confidence, and "majority action must be 'intrinsically fair' to minority interests." *Id.* (quoting *Fought v. Morris,* 543 So.2d 167, 171 (Miss.1989)); *see also Casey v. Brennan,* 344 N.J.Super. 83, 780 A.2d 553, 568 (Ct.App. Div.2001) ("[W]here . . . a shareholder claim of unfairness involves a corporate transaction in which the directors stand to realize a personal benefit by continuing as shareholders after paying the minority an unfairly low price, we have no hesitancy in concluding that the fiduciary responsibilities of the directors and of the corporation toward all shareholders impose upon them the burden of proving the transaction was not 'unfair and inequitable' to plaintiffs."). Thus, the *Walta* court held that a controlling shareholder owed a non-controlling shareholder a fiduciary duty in efforts to restructure the corporation, including the purchase of the non-controlling shareholder's stock. 2002–NMCA–015, ¶ 38, 131 N.M. 544, 40 P.3d 449. Further, the court held that breach of that fiduciary duty could be asserted as an individual claim separate from the remedies available under New Mexico's statutory corporate law for oppressive conduct. *Id.* Therefore, under *Walta,* McMinn's complaint stated a substantial claim for breach of fiduciary duties, regardless of the availability of an appraisal remedy due to the merger.

{21} Adding a further layer of fiduciary responsibilities is the conflict of interest inherent in the cash-out merger designed by Sturges and Daniels, whereby they caused the original corporation to merge with a shell corporation also controlled by them and created for their benefit. Such conflict of inter-

est transactions are traditionally held up to careful scrutiny under fiduciary duty principles implicating the duty of loyalty. *See Mayeux v. Winder*, 2006–NMCA–028, ¶ 19, 139 N.M. 235, 131 P.3d 85 (noting that "the burden should be on the fiduciary to show proper dealings ... in [cases] involving transaction[s] that create[ ] a facial presumption of self-dealing"). "The general rule is that one acting in a fiduciary capacity for another has the burden of proving that a transaction with himself was advantageous for the person for whom he was acting." *Cleary v. Cleary*, 427 Mass. 286, 692 N.E.2d 955, 958 (1998) (quoted authority omitted); *see also Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del.1983) ("When directors of a Delaware corporation are on both sides of a transaction, they are required to demonstrate their utmost good faith and the most scrupulous inherent fairness of the bargain."); Robert B. Thompson, *Exit, Liquidity, and Majority Rule: Appraisal's Role in Corporate Law*, 84 Geo. L.J. 1, 45–46 (1995) ("[E]lsewhere in corporate law, conflicts traditionally have triggered stricter scrutiny than what is found in the current appraisal process.").

{22} With these fundamental principles of corporate law in mind, we now turn to New Mexico's appraisal statute and analyze whether it provides adequate scrutiny of conflict transactions and redress for conduct that breaches a fiduciary duty. The adequacy of the remedy is indicative of its intended scope. *See Sabella v. Manor Care, Inc.*, 1996–NMSC–014, ¶ 17, 121 N.M. 596, 915 P.2d 901 ("[T]he comprehensiveness or adequacy of the remedy provided is a factor to be considered in deciding whether a statute provides the exclusive remedies.").

**New Mexico's Statutory Scheme**

{23} The exclusivity provision contained in Section 53–15–3 must be considered in conjunction with the other relevant dissent and appraisal provisions, along with the purpose behind the statutory remedy. Quoted earlier and repeated here for convenience, the exclusivity provision states as follows:

A shareholder of a corporation who has a right under this section to obtain pay-

ment for his shares shall have no right at law or in equity to attack the validity of the corporate action that gives rise to his right to obtain payment, nor to have the action set aside or rescinded, except when the corporate action is unlawful or fraudulent with regard to the complaining shareholder or to the corporation.

Section 53–15–3(D). This language appears to limit a dissenting shareholder to an appraisal in the absence of fraud or illegality. However, putting aside the issue of whether MBF's conduct falls within the express exception in the statute, the language of the exclusivity provision itself is not the end of our inquiry. As this Court noted in *State ex rel. Helman v. Gallegos*:

While ... one part of the statute may appear absolutely clear and certain to the point of mathematical precision, lurking in another part of the enactment, or even in the same section, or in the history and background of the legislation, or in an apparent conflict between the statutory wording and the overall legislative intent, there may be one or more provisions giving rise to genuine uncertainty as to what the legislature was trying to accomplish. In such a case, it is part of the essence of judicial responsibility to search for and effectuate the legislative intent—the purpose or object—underlying the statute.

117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994).

{24} Reading the statutory scheme as a whole, our attention is drawn to Section 53–15–4(B), which offers some guidance in discerning the limits of the appraisal remedy and the types of transactions to which it was intended to apply. That provision sets forth the procedures that a dissenting shareholder electing to pursue the appraisal remedy must follow. The dissenting shareholder is required to file a written objection prior to or at the meeting at which the proposed merger is submitted to a vote, and then make a written demand on the surviving corporation for payment of the fair value of the dissenting shareholder's shares. Section 53–15–4(B) places certain limitations on the availability of the appraisal remedy:

[i]f ... no demand or petition for the determination of fair value by a court has been made or filed within the time provided in this section, ... **then the right of the shareholder to be paid the fair value of his shares ceases and his status as a shareholder shall be restored, without prejudice, to any corporate proceedings which may have been taken during the interim.**

(Emphasis added.)

{25} Notably, the statute states that when a dissenting shareholder does not file a demand for fair value of his shares (appraisal), then the shareholder's right to an appraisal "ceases" and he is "restored" to his shareholder status. He does not have to accept whatever small sums the majority may choose to pay him for his shares. Instead, he may continue as a shareholder, a right which McMinn requested in this case and the majority refused. Therefore, appraisal and a buy-out is clearly not an exclusive remedy that the majority can arbitrarily impose upon the minority.

{26} However, removing the right to appraisal and restoring a dissenting shareholder to his former status, whereby he would be entitled to vote and exercise other rights of a shareholder, only makes sense when a merger takes place between two unrelated corporations. It does not make sense when the merger itself is designed to eliminate the non-controlling shareholder. *See* Thompson, *supra*, at 21 ("State legislatures' decisions to place the procedural burden on the minority seemed appropriate when the minority had the right to continue in the changed enterprise, but instead chose to retire.").

{27} Thus, a conflict is created if we were to apply the statutory language to the merger transaction undertaken by MBF. The purpose of the merger was to eliminate McMinn's interest in the company, but the statute provides that if McMinn did not file a demand for an appraisal, his rights as a shareholder should be restored. We now turn to an examination of the evolving purpose behind the appraisal remedy in order to shed light on this issue.

## Purpose of the Appraisal Remedy

{28} The underlying purpose of the appraisal remedy has undergone a dramatic transformation in recent years in response to the changing nature of merger transactions. Historically, the appraisal remedy served a liquidity function. *See generally* Barry M. Wertheimer, *The Purpose of the Shareholders' Appraisal Remedy*, 65 Tenn. L.Rev. 661, 674 (1998). When the common law requirement of unanimous shareholder approval for fundamental corporate transactions began to be replaced by statutes allowing approval by a mere majority, the appraisal remedy evolved, allowing dissenting shareholders to demand cash for the fair value of their shares. *See Brown v. Arp & Hammond Hardware Co.*, 141 P.3d 673, 680 (Wyo.2006). "Once shareholders lost the right to veto fundamental changes, it was possible for shareholders to find themselves involuntarily holding an investment in an entity vastly different from the one originally contemplated." Wertheimer, *supra*, at 662. Appraisal statutes were designed to protect dissenting shareholders by allowing them a "way out" of an investment involuntarily altered by a fundamental corporate change. *See id.* at 663. The appraisal remedy thus served as a quid pro quo: in exchange for relinquishing their veto power, minority shareholders could dissent and receive cash for the fair value for their shares. *See HMO–W Inc. v. SSM Health Care Sys.*, 234 Wis.2d 707, 611 N.W.2d 250, 254 (2000).

{29} At the time appraisal rights became part of corporate statutes, there were substantial prohibitions on the use of mergers as a method of eliminating or "cashing out" minority shareholders. *See, e.g., Roland Int'l Corp. v. Najjar*, 407 A.2d 1032, 1034 (Del.1979) (stating that fiduciary duties are violated when "those who control a corporation's voting machinery use that power to 'cash out' minority stockholders, that is, to exclude them from continued participation in the corporate life, for no reason other than to eliminate them"), *overruled by Weinberger*, 457 A.2d 701; *In re Paine*, 200 Mich. 58, 166 N.W. 1036, 1038–39 (1918) (stating that it is not conceivable that the legislature intended statute to be used to drive out minority for

no better reason than majority wanted to acquire its interest); *Theis v. Spokane Falls Gaslight Co.*, 34 Wash. 23, 74 P. 1004, 1006 (1904) (concluding that dissolution was not proper if the only purpose was to get rid of disagreeable minority shareholders); Thompson, *supra*, at 18–20. Merger transactions typically involved unrelated corporations and were structured so that stock in the acquiring corporation was issued to shareholders of the acquired corporation. *See id.* "The procedures attendant to the appraisal process and the valuation standard reflected this more limited reach of majority power and of the appraisal remedy." *Id.* at 20.

{30} Today, however, financial and legal practices have shifted and mergers are often used solely to eliminate minority shareholders. *See Pueblo Bancorporation v. Lindoe, Inc.*, 63 P.3d 353, 363 (Colo.2003). "This change in the use of fundamental corporate transactions requires a change in thinking about the purpose served by the appraisal remedy. The historic liquidity function of the remedy has diminished, and the remedy now serves a minority shareholder protection rationale, primarily in the context of cash out merger transactions." Wertheimer, *supra*, at 663. Despite these shifts in the nature of merger transactions and the exposure of non-controlling shareholders to oppressive conduct on the part of controlling shareholders, many jurisdictions, including New Mexico, have not revised their appraisal statutes to take into account the changing environment of corporate affairs. *See* Thompson, *supra*, at 28 ("The transformation of appraisal into a remedy for self-dealing does not easily fit with existing appraisal statutes." (footnote omitted)); *Sealy Mattress Co. of N.J., Inc. v. Sealy, Inc.*, 532 A.2d 1324, 1335 (Del.Ch. 1987) (holding that appraisal is not exclusive in non-arms length merger and expressing concern that majority stockholders not be allowed to "time or structure the transaction, or to manipulate the corporation's values, so as to permit or facilitate the forced elimination of the minority stockholders at an unfair price").

### Appraisal is Not the Exclusive Remedy in This Case

{31} MBF's use of a freeze out merger, particularly in the context of a closely-held corporation, has important implications for the appraisal remedy that, unfortunately, our statute does not address. As one commentator has observed:

> Too many of the current rules are carryovers from the earlier period when the primary risk of abuse in the appraisal proceeding was hold-ups by minority shareholders, which is the opposite of the risk in a squeeze-out situation in which majority shareholders with conflicts of interest are setting the terms of cash-out transactions. . . . . Judges today assume that appraisal was intended as an exclusive alternative to fiduciary duty when that is not the way appraisal traditionally functioned nor is it the way current appraisal procedures permit today's remedy to function. The result is greater freedom for majority shareholders to direct the enterprise and less review of conflict of interest situations inherent in squeeze-out transactions.

Thompson, *supra*, at 54. *See* 2 F. Hodge O'Neal & Robert B. Thompson, *Close Corporations and LLCs: Law and Practice* § 9:5, at 9–22 to 9–23 (3d ed. 2004) ("The difficulty of valuing shares in a close corporation diminishes the usefulness of the appraisal remedy as a protection to minority shareholders."). New Mexico's appraisal statute appears to be designed to address arms-length merger transactions between two separate entities and does not seem to contemplate the type of conflict transaction at issue in this case. *See generally* Janet G. Perelson & James C. Compton, *1983 Amendments to the New Mexico Business Corporation Act and Related Statutes*, 14 N.M. L.Rev. 371, 383 (1984) (discussing 1983 amendments and noting that the appraisal remedy in Section 53–15–3 was designed to "preserve[ ] the right of the majority of shareholders to direct the management of the corporation, while respecting the desire of the dissenting shareholders not to participate in the corporate action").

{32} The exclusivity provision in the New Mexico Act, designed for arms-length mergers, is derived from Section 80 of the former Model Business Corporation Act ("MBCA"),

which developed in a similar context. *See* § 53–15–3 Compiler's notes. Responding to current needs, more recent amendments to the MBCA have expressly eliminated exclusivity of appraisal rights in conflict of interest transactions where the merging corporations are under common control. *See* MBCA § 13.02(d) (2003 amendments); Committee on Corporate Laws Report, *Changes in the Model Business Corporation Act Relating to Domestication and Conversion—Final Adoption*, 58 Bus. Law. 219, 289–90 (Nov. 2002) (official comment discussing decision not to make appraisal exclusive in conflict of interest transactions). Section 53–15–3, in contrast, remains unchanged since 1983. Thus, our statute does not reflect legislative attention to the current dilemma in which controlling shareholders orchestrate a transaction to remove non-controlling shareholders, regardless of the non-controlling shareholders' desire to retain their interest in the company.

{33} Although our legislature has not updated New Mexico's corporations statutes, the revisions to the MBCA provide guidance in interpreting our current statutes. Those revisions are instructive as to the underlying purpose of the appraisal remedy, reflecting an intent that appraisal not be used to circumvent close scrutiny of conflict transactions or replace actions for breach of fiduciary duty. Other courts in similar situations have relied upon the MBCA to interpret their yet-unchanged statutes. *See Pueblo Bancorporation*, 63 P.3d at 368 (recent amendments to the MBCA prohibiting use of marketability discounts in determination of fair value were persuasive to court when interpreting Colorado's appraisal statute, despite the lack of any amendments to the Colorado statute); *Brown*, 141 P.3d at 685 (same).

{34} Seen in this light, it now appears that the Court of Appeals may not have ascribed due importance to the distinction between the type of merger at issue here and a merger negotiated at arms-length between two unrelated corporations, not under common control. For instance, the Court of Appeals considered *Steinberg v. Amplica, Inc.*, 42 Cal.3d 1198, 233 Cal.Rptr. 249, 729

P.2d 683, 685 n. 3 (1986), as relevant authority on the issue of New Mexico's exclusivity provision, despite the fact that the court in *Steinberg* expressly limited its holding to mergers of two separate corporations not under common control or controlled by each other. *McMinn*, 2006–NMCA–049, ¶ 28, 139 N.M. 419, 133 P.3d 875. In so considering *Steinberg's* interpretation of California's "similarly worded" general exclusivity provision set forth in Cal. Corp.Code § 1312(a) (1990), the Court of Appeals was too dismissive of the fact that the California provision at issue in *Steinberg* would not have applied to the type of merger that occurred in this case. Indeed, California has an entirely separate provision for freeze out mergers, one that, unlike New Mexico's statute, expressly eliminates the right of appraisal for dissenting shareholders and subjects the merger transaction to a higher degree of scrutiny, similar to the entire fairness test set forth in *Weinberger*, 457 A.2d at 711, which we discuss in more detail later in this opinion. *See* Cal. Corp.Code § 1312(a), (b). Therefore, California's general exclusivity provision should not be used to interpret the application of New Mexico's exclusivity provision in this case.

{35} As the Delaware Supreme Court observed in *Weinberger*, a breach of fiduciary duty case where the directors of the defendant corporations stood on both sides of the transaction, "the appraisal remedy ... may not be adequate in certain cases, particularly where fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching are involved." 457 A.2d at 714. The Court of Appeals cited this same language from *Weinberger* in providing guidance for future litigants as to what types of conduct might fall within the statutory exception for fraud and unlawful conduct. *McMinn*, 2006–NMCA–049, ¶ 22, 139 N.M. 419, 133 P.3d 875. However, the merger at issue in this case involved some of those very issues of conflict of interest and self-dealing because Sturges and Daniels were the controlling shareholders and were on both sides of the transaction. *See* NMSA 1978, § 53–11–40.1A, B(2) ("[A] conflict of interest transaction is a transaction ... in which a director of the corporation has a

direct or indirect interest," and stating that a director has an indirect interest if "another entity of which he is a director . . . is a party to the transaction and the transaction is or should be considered by the board of directors of the corporation"); *Fought*, 543 So.2d at 170 ("[T]he use of the corporate process in the context of mergers designed to discount or remove the participation of the minority interest amounts to self-dealing in that the minority shareholder is denied the right to participate in the benefits of the corporation."). As mentioned previously, inherent in conflict transactions is the potential for abuse of the corporate process for the benefit of those in control. We decline to ascribe to our legislature an intent that would allow controlling shareholders in such situations to escape the close scrutiny typically accorded such transactions.

■ {36} Further, even if the appraisal statute were to apply, the conduct alleged by McMinn on the part of MBF can also be said to fall within the express exception to the exclusivity provision for unlawful corporate actions. *See* § 53–15–3(D). The *Walta* case, decided after the 1984 amendments to the New Mexico Corporations Act, recognized the fiduciary duties of shareholders in close corporations and set out the parameters within which shareholders must operate to satisfy the duties of good faith and loyalty. Oppressive conduct that breaches such fiduciary duties is unlawful under *Walta*, and therefore falls within the exception in the exclusivity provision for unlawful actions. *See Cohen v. Mirage Resorts, Inc.*, 119 Nev. 1, 62 P.3d 720, 729 (2003) (noting that "the term 'fraudulent,' as used in the Model Act, has not been limited to the elements of common-law fraud; it encompasses a variety of acts involving breach of fiduciary duties imposed upon corporate officers, directors, or majority shareholders"); *Smith v. N.C. Motor Speedway, Inc.*, 1997 WL 33463603, *6 (N.C.Super.Ct.1997) ("[T]he dissent and appraisal procedure does not provide the exclusive remedy where a transaction is determined to be 'unlawful or fraudulent,' and . . . a breach of fiduciary duty is subsumed within these terms."). To hold otherwise would erase significant developments in New Mexico law on closely held corporations that took

place in spite of the existence of the appraisal remedy and the exclusivity provision in Section 53–15–3. As discussed in the following section, controlling shareholders in close corporations potentially could engage in oppressive tactics in breach of their fiduciary duties, and then escape liability for those actions simply by instituting an appraisal-triggering transaction to relegate minority shareholders to an appraisal proceeding for their shares.

### Extinguishing Claims Arising Prior to Appraisal–Triggering Event

{37} Perhaps even more troubling than the prospect that exclusivity of appraisal will undermine the strict scrutiny of conflict of interest transactions is the possibility that appraisal will be used to extinguish legitimate claims based on director misconduct that occurred prior to the appraisal-triggering event. One commentator offers the following explanation of this problem:

> [E]xclusivity may effectively extinguish shareholder claims alleging that director misconduct prior to the appraisal-triggering event resulted in the shares being devalued. This effect results if a court, because of the availability of appraisal, (1) refuses to entertain a claim based on director conduct other than the decision to engage in the appraisal-triggering event on particular terms, or (2) limits its inquiry in the process to finding the value of shares at the time of the appraisal-triggering event. If a court applies exclusivity in this way, claims will be extinguished even though the cash requested as damages in collateral actions is not a function of an alleged misvaluation decision by directors in setting the terms of the appraisal-triggering event, but rather compensation for the directors' separate, preappraisal misconduct. Moreover, the shareholder actions are lost notwithstanding the fact the court would have entertained the claim but for the fortuity of an intervening appraisal-triggering event.

Michelle M. Pepin, *Exclusivity of Appraisal—The Possibility of Extinguishing Shareholder Claims*, 42 Case W. Res. L.Rev. 955, 956 (1992); *see also Yanow v. Teal Indus.*,

Inc., 178 Conn. 262, 422 A.2d 311, 322 n. 10 (1979) (noting that plaintiffs are not precluded from bringing "claims antecedent to and unrelated to the merger," notwithstanding statute expressly making appraisal the exclusive remedy). The instant case exemplifies this concern.

{38} Months before the directors of MBF conceived the plan of merger, McMinn had been complaining of the lack of a dividend policy and his belief that Daniels and Sturges were taking excessive salaries and failing to pay him his share of profits in contravention of the shareholders' agreement.[2] It cannot be disputed that these allegations would have supported an independent claim for breach of fiduciary duty had no merger transaction taken place. If we interpret the statutory appraisal remedy as McMinn's exclusive recourse in this case, his claims will be foreclosed. But the damages requested in his complaint were not simply a function of an alleged misvaluation decision by MBF in setting the terms of the merger, but rather on MBF's pre-merger misconduct. Furthermore, limiting McMinn to an appraisal valuation of the corporation after it allegedly had been depleted by the payment of excessive salaries to Sturges and Daniels would only reward the majority for its conduct and penalize the minority.

{39} In a case like this, where controlling directors are alerted to allegations of a breach of fiduciary duty prior to considering a plan of merger, the institution of a merger transaction with no other purpose than to eliminate the non-controlling shareholder could be devised to relegate the complaining shareholder to an appraisal remedy in order to extinguish such claims. In such circumstances, the directors' conduct in designing the merger can itself be seen as a breach of fiduciary duty. Such conduct should not be permitted to go unscrutinized, and, if proven to breach a fiduciary duty, unredressed. *Fought*, 543 So.2d at 169 ("The traditional view that shareholders have no fiduciary

duty to each other, and transactions constituting 'freeze outs' or 'squeeze outs' generally cannot be attacked as a breach of duty of loyalty or good faith to each other, is outmoded."). As the court in *Kademian v. Ladish Co.*, 792 F.2d 614, 630 (7th Cir.1986) observed, "the prospect that all shareholders will be paid off does not justify the corporation or its officers in acting unlawfully. The appraisal remedy cannot substitute for a suit for breach of fiduciary duty or other torts." *See also Sealy Mattress Co.*, 532 A.2d at 1335 ("As fiduciaries seeking to 'cash out' the minority shareholders of a Delaware corporation in a non-arm's length merger, the defendants had a duty to be entirely and scrupulously fair to the plaintiffs in all respects.").

{40} We note that, had MBF not initiated the merger which it now claims relegates McMinn to an appraisal, it would not be able to object to a suit asserting the same claims asserted here. Further, in that case had the jury found, as it did here, that MBF had breached its fiduciary duties, then it could have awarded damages amounting to the fair value of McMinn's shares pursuant to *Walta*. *See also Int'l Telecharge, Inc. v. Bomarko, Inc.*, 766 A.2d 437, 441 (Del.2000) (noting in breach of fiduciary duty action by minority shareholders against CEO who merged corporation into another company controlled by him, shareholders were entitled to receive "at a minimum, what their shares would have been worth at the time of the Merger if [the CEO] had not breached his fiduciary duties" (quoted authority omitted)). Indeed, at trial in this case, McMinn presented expert testimony on the proper valuation of his shares, and the jury awarded him damages in that amount. On appeal, MBF did not contend that the verdict in McMinn's favor was unsupported by substantial evidence or that its own valuation of the company was fair to McMinn; rather, MBF argued simply that an appraisal was McMinn's exclusive remedy and that because he did not elect to pursue

---

2. The only agreement between the original shareholders was an oral agreement that all would share in the profits of the company. This case highlights the importance of written buy-out agreements. Had there been such an agreement addressing how to deal with shareholders who were no longer employed by the company, then that agreement would control and there would have been no need to devise a merger to separate McMinn from the company. Our holding in this case represents a default position that will control in the absence of such an agreement.

an appraisal, he was bound by the terms of the merger.

{41} Nothing in the appraisal statute indicates that cashed-out shareholders cannot pursue claims based on conduct antecedent or unrelated to the appraisal-triggering transaction itself. Further, the express exception in the statute for unlawful actions encompasses claims based on director misconduct that breaches a fiduciary duty. As we have said, if appraisal were the exclusive remedy for shareholders of closely-held corporations whose interests are cashed out in conflict of interest mergers, then the remedy would no longer serve its original purpose: to protect dissenting shareholders. What was designed as a shield to benefit minority shareholders who had lost their power to veto fundamental corporate transactions, would be transformed into a sword for majority oppression of the minority. Such a result is contrary to longstanding common law principles of fiduciary duty. *See Rosiny v. Schmidt*, 185 A.D.2d 727, 739, 587 N.Y.S.2d 929 (N.Y.App.Div.1992) (noting "the longstanding principle that where a fiduciary relationship exists between parties, transactions between them are scrutinized with extreme vigilance ..." (quoted authority omitted)). We decline to interpret the appraisal statute in a manner that would undermine those principles and the New Mexico case law that has developed in this area since the last time the statute was amended.

### The Delaware Approach to Exclusivity

{42} Though there is certainly no uniformity among jurisdictions addressing exclusivity of the appraisal remedy, several other states have interpreted their statutes to allow for breach of fiduciary duty claims outside of an appraisal proceeding. *See Mullen v. Academy Life Ins. Co.*, 705 F.2d 971, 973 (8th Cir.1983) (noting that a developing body of case law and commentary suggests that

"majority stockholders owe minority stockholders a fiduciary duty which is independent of statute and which may be enforced in an action other than a statutory [appraisal] proceeding"); *IRA for Benefit of Oppenheimer v. Brenner Cos.*, 107 N.C.App. 16, 419 S.E.2d 354, 357 (1992) ("[A] statutory appraisal is not a dissenting shareholder's exclusive remedy when the shareholder has presented claims of breach of fiduciary duty, fraud, self-dealing, securities violations, or similar claims based on allegations other than solely the inadequacy of the stock price."). Most persuasive to us is the approach taken by the courts in Delaware,[3] which several other states have followed, Delaware being widely recognized as "the fountainhead of American corporations" whose courts "are known for their expert exposition of corporate law." *In re Ivan F. Boesky Sec. Litig.*, 129 F.R.D. 89, 97 (S.D.N.Y.1990); *see also IBS Fin. Corp. v. Seidman & Assocs.*, 136 F.3d 940, 949–50 (3d Cir.1998) ("When faced with novel issues of corporate law, New Jersey courts have often looked to Delaware's rich abundance of corporate law for guidance."); *Connolly v. Agostino's Ristorante, Inc.*, 775 So.2d 387, 388 n. 1 (Fla.Dist.Ct.App.2000) (noting that "[t]he Florida courts have relied upon Delaware corporate law to establish their own corporate doctrines" (quoted authority omitted)); *Hilton Hotels Corp. v. ITT Corp.*, 978 F.Supp. 1342, 1346 (D.Nev.1997) ("Where ... there is no Nevada statutory or case law on point for an issue of corporate law, this Court finds persuasive authority in Delaware case law."); *Jacobson v. Am. Tool Cos.*, 222 Wis.2d 384, 588 N.W.2d 67, 73 (Ct.App.1998) (relying on Delaware case law, and *Weinberger* specifically, to define fiduciary duty principles).

{43} *Weinberger* is the seminal Delaware case on exclusivity of appraisal. As noted previously, the Delaware Supreme Court in

---

3. Though the Delaware appraisal statute does not have an express exclusivity provision, Delaware case law provides a comprehensive analysis of the scope of the appraisal remedy. That analysis is not incompatible with the New Mexico statute, which contains both an apparent ambiguity when applied to freeze out mergers, and an express exception for fraudulent or unlawful conduct. *See Krieger v. Gast*, 122 F.Supp.2d 836,

844 (W.D.Mich.2000) (noting that "there is [no] significant difference between the scope of the appraisal remedy under Delaware law and the law of other states, because most states, even those whose statutes expressly provide that the appraisal remedy is exclusive, recognize an exception at least for fraud, and in many cases 'unlawful' action").

that case recognized that the appraisal remedy may not be adequate in cases involving director misconduct. Thus, the court held that the exclusivity of an appraisal action is conditional and may be invoked when the disagreement is only over whether to accept an otherwise legitimate merger offer. *See Weinberger,* 457 A.2d at 714 (appraisal remedy is exclusive when the only allegation is that the directors have failed to appropriately determine the cash value of the shares); *Stauffer v. Standard Brands Inc.,* 187 A.2d 78, 80 (Del.1962) (cited by *Weinberger* for holding that appraisal is exclusive when the "real relief sought is the recovery of the monetary value of plaintiff's shares" and the dispute reduces to nothing but a difference of opinion as to value). Claims challenging wrongful behavior other than incorrect, accounting-type share valuation should not be forced into an appraisal. *See* Pepin, *supra,* at 969 (noting that "[t]he appraisal statute sets forth the procedure by which a dissenting shareholder can adjudicate the value of his shares" and "[i]f valuation of these shares is not at issue, then the availability of the appraisal process is of little significance").

{44} Further, in the view of the Delaware courts, even if a claim challenges director decision-making related to valuation of shares, that claim will not be precluded by appraisal if such decision-making was accompanied, as it was here, by a conflict of interest. *See, e.g., Nagy v. Bistricer,* 770 A.2d 43, 50–51 (Del.Ch.2000) (noting claim that merger was a self-dealing transaction between corporations controlled by same directors designed to advantage their personal interests at the expense of cashed-out shareholder stated "substantial claim[ ] for breach of fiduciary duty unrelated to judgmental factors of valuation" (quoted authority omitted)); *Weinberger,* 457 A.2d at 714 (noting that the appraisal remedy may not be adequate in cases that involve self-dealing). Delaware subjects conflict-of-interest transactions, such as the merger at issue in this case, to judicial review for entire fairness, with the burden resting on the controlling shareholders who stand on both sides of the transaction to establish the entire fairness of the transaction, both in terms of fair dealing and fair price. *See Weinberger,* 457 A.2d at 710–

11. If the controlling shareholders cannot sustain this burden, then the transaction amounts to a breach of fiduciary duty. *See, e.g., Delaware Open MRI Radiology Assocs. v. Kessler,* 898 A.2d 290 (Del.Ch.2006). Pursuant to *Weinberger* and its progeny, "[i]t is not unusual [in Delaware] for the same merger to be challenged in a statutory appraisal action and in a separate breach of fiduciary duty damage action." *M.G. Bancorporation, Inc. v. Le Beau,* 737 A.2d 513, 520 (Del.1999).

{45} We find the Delaware approach instructive, based upon its reasoning and the experience of its courts in matters of corporate law. Accordingly, for all the reasons stated herein, we hold that the New Mexico appraisal remedy was not intended to replace common law actions for breach of fiduciary duty. Given the conflict created by the language of our appraisal statutes, the purpose of the appraisal remedy, the nature of MBF as a close corporation, and the particular acts of misconduct alleged by McMinn in this case, the trial court correctly allowed McMinn to proceed with his breach of fiduciary duty suit, regardless of the existence of the appraisal remedy.

**MBF's Arguments**

{46} MBF asserts that because McMinn sought only compensatory damages amounting to the fair value of his shares and because McMinn's expert testified to the proper method of valuing those shares, McMinn's complaint was essentially that he was not paid fair value for his stock and thus an appraisal proceeding was the exclusive remedy. However, the dispute cannot be defined by the remedy sought. *See Berger v. Intelident Solutions, Inc.,* 911 A.2d 1164, 1172 (Del.Ch.2006) (rejecting "rigid" New York approach that holds appraisal to be exclusive if primary relief sought is monetary); *Delaware Open MRI Radiology Assocs.,* 898 A.2d at 344 (stating remedy for breach of fiduciary duty was same as amount determined to be fair value in appraisal). As the dissenting justice in *Stepak v. Schey,* 51 Ohio St.3d 8, 553 N.E.2d 1072, 1079 (1990) observed, "dissatisfaction with the price paid does not automatically convert the action to a simple

demand for the 'fair cash value' of a stockholder's shares."

▮ {47} *Walta* indicates that the proper remedy in a breach of fiduciary duty action involving the squeeze-out of a non-controlling shareholder in a close corporation is compensatory damages measured by the fair value of the former shareholder's shares. 2002–NMCA–015, ¶¶ 28, 66, 131 N.M. 544, 40 P.3d 449. The jury having found that McMinn proved misconduct on the part of MBF, McMinn was entitled to damages in the amount of the value of his shares, determined by proper valuation methods and taking into account any devaluation worked by MBF's misconduct.

{48} MBF also argues that McMinn has pointed to no authority that he could not have presented evidence of breach of fiduciary duty in an appraisal proceeding, to the extent those claims were related to the fair value of the company. However, neither does MBF point to any binding authority that McMinn *could* have presented such evidence in an appraisal proceeding. Indeed, MBF's counsel conceded that, had McMinn elected to pursue an appraisal, MBF would have argued that breach of fiduciary duty claims are not properly considered in an appraisal action and that lost profits could not be included in the determination of "fair value."

{49} The New Mexico statute does not define "fair value" and is silent on what types of claims can be litigated and how fair value should be calculated in an appraisal proceeding.[4] Courts addressing exclusivity of the appraisal remedy in other states have come up with a number of disparate approaches to whether claims for breach of fiduciary duty can be considered within an appraisal action. Thus, case law from other jurisdictions does not point out a clear path on that issue.

{50} Some courts have interpreted their statutes to provide for an appraisal remedy that takes director misconduct into account in valuing dissenting shareholders' shares. *See, e.g., Bingham Consolidation Co. v. Groesbeck,* 105 P.3d 365, 374 (Utah Ct.App.2004) (dissenting shareholders' two separate actions, one for appraisal and one seeking compensatory and punitive damages, were properly consolidated into a single appraisal proceeding "because the core of [the shareholders'] action [was] to recover only that increment of value lost due to [the corporation's] self-dealing"); *HMO–W, Inc.,* 611 N.W.2d at 259 (court may consider evidence of unfair dealing as it affects the value of a dissenter's shares); *Bomarko v. Int'l Telecharge, Inc.,* 1994 WL 198726, at *2 ("[B]reach of fiduciary duty claims that do not arise from the merger are corporate assets that may be included in the determination of fair value."). Other authority suggests that evidence of breach of fiduciary duty and concomitant damage awards are not appropriate in appraisal proceedings. *See, e.g., Sieg Co. v. Kelly,* 568 N.W.2d 794, 802 (Iowa 1997) (holding that "the narrow remedy provided by an appraisal action does not encompass claims of fraud, self-dealing or breach of fiduciary duty" and that "any claim of breach of fiduciary duty must be

4. Though the current New Mexico statute does not define "fair value," revisions to the Model Act now provide that "fair value" is the value of the corporation's shares determined:

    (i) immediately before the effectuation of the corporate action to which the shareholder objects;

    (ii) using customary and current valuation concepts and techniques generally employed for similar businesses in the context of the transaction requiring appraisal; and

    (iii) without discounting for lack of marketability or minority status....

MBCA § 13.01. Wells' report did not comport with any of these guidelines. The value of McMinn's shares was determined not from the time of the merger, but from the time he resigned his employment with MBF. Wells did not use any of the three valuation techniques prescribed by New Mexico law. *See Tome Land & Imp. Co. v. Silva,* 83 N.M. 549, 552, 494 P.2d 962, 965 (1972) ("In arriving at the fair value of the shares of the dissenting stockholders, the courts have been almost unanimous in using a combination of three elements of valuation: (1) Net asset value; (2) market value; and (3) investment or earnings value."). And, MBF applied a minority discount to McMinn's shares. *See, e.g., Cavalier Oil Corp. v. Harnett,* 564 A.2d 1137, 1144 (Del.1989) (marketability discounts and minority discounts are not to be applied in an appraisal because the "objective of [a statutory appraisal] is to value the corporation itself, as distinguished from a specific fraction of its shares as they may exist in the hands of a particular shareholder").

presented in a separate action" because "it is not appropriate to consider it in [an appraisal proceeding]"); *Armstrong v. Marathon Oil Co.*, 32 Ohio St.3d 397, 513 N.E.2d 776, 798 (1987) (causes of action seeking compensation other than the value of dissenter's shares are not foreclosed by appraisal, but such causes of action may not be joined with the appraisal proceeding and must be brought separately). At the time McMinn filed his suit, there was no New Mexico authority allowing consideration of breach of fiduciary duty claims in appraisal proceedings.

{51} The current language of the statute does not appear to allow for consideration of anything beyond "fair value" in an appraisal. Such an action has a "limited purpose and focus," with the only litigable issue being "the determination of the value of the appraisal petitioners' shares on the date of the merger." *Nagy*, 770 A.2d at 52. Without further elaboration by the legislature, we will not expand the appraisal remedy beyond the clear language of the statute. Appraisal serves a limited accounting function for arms-length mergers and is exclusive in that realm only. Therefore, we hold that Section 53–15–3 does not provide the exclusive remedy for freeze out mergers accompanied by conflicts of interest or allegations of misconduct.

## FIDUCIARY DUTY OF THE CORPORATION

{52} MBF contends that exclusivity in this case turns on the fact that the individual directors were dismissed and McMinn's breach of fiduciary duty case proceeded against the corporation alone. MBF argues that McMinn's allegations that he was deprived of profits in contravention of the shareholders' agreement and that Sturges and Daniels paid themselves excessive salaries will only support a breach of fiduciary duty claim against Sturges and Daniels individually. The Court of Appeals apparently relied on this distinction between the corporation and the individual directors in determining exclusivity, stating that it was "only considering whether the appraisal remedy is the exclusive remedy in a suit against the corporation for breach of fiduciary duty."

*McMinn*, 2006–NMCA–049, ¶ 35, 139 N.M. 419, 133 P.3d 875. The Court of Appeals did not decide "whether and under what circumstances a dissenting shareholder may have a common law claim against the majority shareholders or the officers and directors." *Id.*

{53} While the distinction between the individual directors and the corporate entity might have relevance to the question of exclusivity of the appraisal remedy, in this case we treat the two as one and the same because that distinction was not made in the trial court and the case was not presented to the jury in that way. Instead, the court instructed the jury as follows:

Every **corporation** has a fiduciary duty to its shareholders. Fiduciary duty requires **the corporation** to act candidly to disclose material facts and to deal openly, honestly and fairly with its shareholders. This duty also includes the duty of loyalty and a duty to avoid self-seeking and self-dealing conduct.

A corporation can only act through its ... officers and employees.... **Any act or omission of an officer or of any employee of a corporation within the scope of his employment is an act or omission of the corporation.**

(Emphasis added.) Although MBF now suggests that a corporation does not owe fiduciary duties to its shareholders, MBF did not object to this instruction or to McMinn's counsel's closing argument applying this theory. Further, MBF's counsel, in discussing how to instruct the jury on fiduciary duty, stated that "all parties admit that there was a fiduciary duty running both ways. There isn't even any issue." These admissions along with the jury instructions are now law of the case and, for purposes of this appeal, we treat the fiduciary duties owed by Sturges and Daniels and those owed by MBF as one and the same. *See Couch v. Astec Indus., Inc.*, 2002–NMCA–084, ¶ 40, 132 N.M. 631, 53 P.3d 398 ("Jury instructions not objected to become the law of the case.").

## CONCLUSION

{54} Whether we say that the exclusivity provision in Section 53–15–3 does not apply

to the merger transaction in this case because of the potential conflict of interest or that the exception to the exclusivity provision applies because of the nature of the close corporation and the extinguishment of prior claims, McMinn was not foreclosed from seeking compensatory damages for breach of fiduciary duty and electing not to pursue an appraisal. The Court of Appeals did not address McMinn's claims on appeal because it found that appraisal was the exclusive remedy. Because we now hold that appraisal was not McMinn's exclusive remedy, we remand to the Court of Appeals to consider McMinn's claims on appeal.

{55} IT IS SO ORDERED.

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA, and PETRA JIMENEZ MAES, Justices, CELIA FOY CASTILLO, Judge (sitting by designation).